**NOT YET SCHEDULED FOR ORAL ARGUMENT**

# United States Court of Appeals
# for the District of Columbia Circuit

### No. 23-3106

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DANIEL GOODWYN,

*Defendant-Appellant.*

*On Appeal from the United States District Court for the District of Columbia in No. 1:21-cr-00153-RBW-1, Honorable Reggie B. Walton, U.S. Senior District Judge.*

## BRIEF FOR DEFENDANT-APPELLANT

CAROLYN A. STEWART
STEWART COUNTRY LAW PA
1204 Swilley Road
Plant City, Florida 33567
(813) 946-8066
carolstewart_esq@protonmail.com

*Counsel for Defendant-Appellant*

September 5, 2023



(800) 4-APPEAL • (323632)

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.    Parties and Amici**:

This appeal arises from the sentencing order of DANIEL GOODWYN, the Appellant, after conviction through a guilty plea to 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds. (ADD1) There are no intervenors or amici.

**B.    Rulings Under Review**:

This is an appeal from the Sentence Final Judgment Order (A33-A39) entered June 16, 2023, by the Honorable Reggie Walton. Mr. Goodwyn seeks review of and revocation of the order's special conditions of supervised release for Probation Services to search his computer and install computer and electronic monitoring equipment to surveil whether his speech puts forth "disinformation" about anything related to January 6, 2021.

**C.    Related Cases:**

This case has not been before this Court previously. There are no related cases.

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

A.   Parties and Amici................................................................................i

B.   Rulings Under Review.........................................................................i

C.   Related Cases.......................................................................................i

TABLE OF AUTHORITIES ...............................................................iv

GLOSSARY OF ABBREVIATIONS ..................................................... vii

JURISDICTIONAL STATEMENT ........................................................1

STATUTES AND RULES ..........................................................................1

STATEMENT OF ISSUES ........................................................................2

STATEMENT OF THE CASE....................................................................3

I.   Facts and Background..........................................................................4

II.   Proceedings and the Disposition........................................................8

SENTENCING HEARING DAY 1 ...........................................................9

SENTENCING DAY 2 – JUNE 6, 2023 .................................................10

SUMMARY OF THE ARGUMENT .......................................................15

I.   ISSUE 1 .............................................................................................15

II.   ISSUE 2 .............................................................................................16

III.   ISSUE 3 .............................................................................................17

ARGUMENT ............................................................................................18

I.   The District Court Abused Its Discretion and Made a Mistake of
     Law by Ordering a Supervised Release Special Condition for
     Computer and Device Searches, with Monitoring for
     "Disinformation" .............................................................................21

     A.   Standard of Review .................................................................21

The Normal Standard for Sentencing Appeals is
"Reasonableness" and Abuse of Discretion ........................................ 21

B.     The Special Condition of Computer Searches and Monitoring
       in the Sentence Violates the Statutory Considerations and is
       an Abuse of Discretion ....................................................................... 23

II.    The Special Release Condition Violates the First Amendment .................... 27

A.     Standard of Review ............................................................................ 28

B.     The Special Condition Requiring Searching and Monitoring
       for Disinformation Cannot Pass Strict Scrutiny ................................. 29

III.   The Special Release Condition Will Violate the Fourth Amendment ......... 31

A.     Standard of Review ............................................................................ 31

B.     The Warrantless Search and Monitoring of Mr. Goodwyn's
       Computer and Devices Violates the Fourth Amendment .................. 31

CONCLUSION ........................................................................................ 33

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*,
    564 U.S. 721 (2011)..............................................................28

*Boy Scouts of America v. Dale*,
    530 U.S. 640 (2000)..............................................................30

*Brigham City* v. *Stuart*,
    547 U.S. 398, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006) ...........................31

*Gall v. United States*,
    552 U.S. 38, 128 S. Ct. 586 (2007) ......................................................21, 22

*Hill v. Colo.*,
    530 U.S. 703 (2000)..............................................................29

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015)..............................................................29

*Riley v. California*,
    573 U.S. 373 (2014)..............................................................31

*U.S. v. Burroughs*,
    613 F.3d 233 (D.C. Cir. 2010) .......................................................22, 23, 24

*U.S. v. Love*,
    593 F.3d 1 (D.C. Cir. 2010) .........................................................21, 24

*U.S. v. Russell*,
    600 F.3d 631 (D.C. Cir. 2010) ..................................................22

*U.S. v. Sullivan*,
    451 F.3d 884 (D.C. Cir. 2006) ..................................................24

*United States v. Booker,*
    543 U.S. 220 (2005)..............................................................20

*United States v. Bras*,
    483 F.3d 103 (D.C. Cir. 2007) ..................................................20, 21

*United States v. Brown*,
    808 F.3d 865 (D.C. Cir. 2015) ..................................................20

*United States v. Butler,*
 694 F.3d 1177 (10th Cir. 2012)......................................................26

*United States v. Castro-Juarez,*
 425 F.3d 430 (7th Cir. 2005)...........................................................21

*United States v. Dunn*,
 777 F.3d 1171 (10th Cir. 2015)......................................................26

*United States v. Guillen,*
 561 F.3d 527 (D.C. Cir. 2009) .......................................................19

*United States v. Lee*,
 888 F.3d 503 (D.C. Cir. 2018) .......................................................19

*United States v. Malenya,*
 736 F.3d 554 (D.C. Cir. 2013) ........................................18, 22, 24

*United States v. Olano,*
 507 U.S. 725, 113 S. Ct. 1770 (1993)...........................................24

*United States v. Perazza-Mercado,*
 553 F.3d 65 (2009)..........................................................................23

*United States v. Wright,*
 6 F.3d 811 (D.C. Cir. 1993) ...........................................................22

*Vernonia School Dist. 47J v. Acton,*
 515 U.S. 646, 115 S. Ct. 2386, 132 L. Ed. 2d 564 (1995) ............31

*W. Virginia State Bd. of Educ. v. Barnette*,
 319 U.S. 624 (1943)........................................................................28

*Ward v. Rock Against Racism,*
 491 U.S. 781 (1989)........................................................................28

**Statutes & Other Authorities:**

U.S. Const., amend. I ..............................................2, 16, 19, 27, 30, 33

U.S. Const., amend. IV ...............................................2, 17, 27, 31, 33

18 U.S.C. § 1030(e)(1)..............................................................10

18 U.S.C. § 1512(c)(2)..................................................................8

18 U.S.C. § 1752 ................................................................3, 16, 30

18 U.S.C. § 1752(a)(1)............................................................2, 3, 7, 8, 16, 19

18 U.S.C. § 1752(a)(2)............................................................................8

18 U.S.C. § 3231....................................................................................1

18 U.S.C. § 3553..............................................................................18, 22

18 U.S.C. § 3553(a)........................................................2, 16, 17, 21, 22

18 U.S.C. § 3563................................................................................15

18 U.S.C. § 3583..........................................................................15, 18

18 U.S.C. § 3583(d)........................................................................2, 25

18 U.S.C. § 3583(d)(1)............................................................18, 22, 24

18 U.S.C. § 3583(d)(2)........................................................................18

18 U.S.C. § 3742(a)..............................................................................1

28 U.S.C. § 1291..................................................................................1

40 U.S.C. § 5104(e)(2)(D)......................................................................8

40 U.S.C. § 5104(e)(2)(G)......................................................................8

Fed. R. Crim P. 52..........................................................................19, 20

Fed. R. App. P. 28(f)............................................................................1

USSG § 5D1.2......................................................................................23

USSG § 5D1.3............................................................................15, 26, 27

USSG § 5D1.3(b)..........................................................2, 15, 16, 17

USSG § 5D1.3(d)(7)............................................................................23

USSG § 5D1.3(d)(7)(B)........................................................................24

USSG § 5F1.5......................................................................................26

*Misinformation,* Merriam-Webster (last visited September 1, 2023)
    https://www.merriam-webster.com/dictionary/misinformation ..................14

# GLOSSARY OF ABBREVIATIONS

A#          Joint Appendix

ADD         Appellant's Addendum

CCTV        Closed Circuit Television

U.S.S.G.    United States Sentencing Guidelines

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this criminal case pursuant to 18 U.S.C. § 3231. A timely notice of appeal having been filed on June 30, 2023, from the sentence judgment order entered June 16, 2023, 2023, this Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATUTES AND RULES

Pursuant to Federal Rule of Appellate Procedure 28(f) and Circuit Rule 28(a)(5), pertinent constitutional provisions, statutes, and rules are set forth in the Addendum to this brief.

# STATEMENT OF ISSUES

**ISSUE 1**:  Whether the district court made a mistake of law and abused its discretion under U.S.S.G. § 5D1.3(b), (ADD3)18 U.S.C. § 3553(a), (ADD6) and § 3583(d) (ADD11) by ordering the special release condition of computer searches and monitoring for "disinformation" when there is no law regarding "disinformation," and no computer use was reasonably related to Mr. Goodwyn's conduct under 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds (ADD1).

**ISSUE 2**:  Whether the district court is violating Mr. Goodwyn's rights under the First Amendment to the U.S. Constitution by its order of computer monitoring and searches for "disinformation" where there is no definition of "disinformation" and there was no computer use that was related to or facilitated his crime under 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds (ADD1).

**ISSUE 3**:  Whether the district court is directing violations of the Fourth Amendment to the U.S. Constitution by ordering computer monitoring and searches without reasonable suspicion or probable cause of criminal activity; where computer searches for undefined "disinformation" are not reasonably related to any crime, let alone the 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds trespassing charge for which Mr. Goodwyn was sentenced.

## STATEMENT OF THE CASE

Mr. Goodwyn's conviction is for the misdemeanor 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds on January 6, 2021. (ADD1). His admission of guilt arose from his conduct involving entry into and remaining in the United States Capitol for under one minute at around 3:32 p.m. He never knew he was not allowed to be on the grounds. He never engaged in, encouraged, incited, or witnessed violence on January 6, 2021 at the U.S. Capitol.

This appeal is not challenging the prison sentence of sixty days that is already completed. Nor is it challenging the fine which is in the guidelines range even though the district court and the Presentence Investigation Report each wrote that he could not afford to pay. The fine was issued for being on a television cable network news show (Tucker Carlson) and not volunteering on air that he used a megaphone to ask others to go inside with him to support the objection process of the Electoral Count. This appeal does not challenge any of the mandatory conditions of release or the one year term of supervised release. The only challenge brought by this appeal is to vacate the special release condition that Mr. Goodwyn must permit of searches his computer and installation of computer monitoring software and equipment to determine whether he is spreading "disinformation" on social media or anywhere. The § 1752 crime involved physical trespass with no related computer use; and he has never been convicted of the non-existent crime of "spreading disinformation."

3

## I. **Facts and Background**:

Mr. Goodwyn went to Washington, D.C. to attend January 6, 2021 permitted rallies and to support the Electoral Vote Count, including legal objections. Mr. Goodwyn knew permitted rallies were to occur on or near the U.S. Capitol grounds on the afternoon of January 6, 2021. He participated in the march to the United States Capitol, arrived sometime around or after 2:00 p.m., and then at some point followed the crowd of marchers toward the west lawn pathway and onto the grounds.

Presented as mitigating by the Defense and overruled: Mr. Goodwyn was diagnosed before January 6, 2021 with the disability of high functioning autism. He participates in therapy since he operates on cues and signals in daily life and social interactions. Autism is not a mental illness.

Mr. Goodwyn is a person with deep religious convictions and values where he did not seek to violate the law. Occupationally, he performed ministry work prior to January 6, 2021. His sole proprietor web site development business requires significant computer use. As a self-employed businessman and journalist, he writes stories that include private interviews (conducted via Zoom and in-person, with the implication of privileged source information), creates website designs, and develops, maintains, and operates web site content. His also receives requests for journalism or free-lance citizen journalism for inclusion in documentary production. His work

encompasses video and reporting that require significant computer and on-line usage that involve clients' proprietary films, documentaries, and materials.

At least one event that Mr. Goodwyn attended prior to January 6, 2021 involved a protest at a state capitol, with protestors invited inside the building. Given his autism and experiential learning of allowable behavior, when Mr. Goodwyn arrived with the peaceful march on the west side of the U.S. Capitol around or after 2:00 p.m. on January 6, 2021, there was no signage indicating that he could not enter the grounds. Over a thousand people were already present on the west side; there were no police or barricades to deter entry; there were no signs indicating any locations or routes to the multiple permitted rallies that had been advertised prior to January 6, 2021; and no dispersal announcements were made.

Mr. Goodwyn entered the grounds in the belief he was allowed to enter. The use of less than lethal weaponry such as rubber bullets, pepper balls, OC spray, and flash bang grenades by the police was not evident. Mr. Goodwyn went up steps to the left of the inaugural stage build-out without encountering or crossing any police lines. There were no police on the lower level because the police had been issued a pullback order into the building at 2:00 p.m. over the main radio channel. He did not see the "tunnel," or physical engagements between civilians and police.

Mr. Goodwyn saw many law enforcement persons standing on the upper west terrace near the Senate wing door and its courtyard-like area. He observed people

5

enter while others exited - all orderly. None of the many police in the immediate area told anyone to not enter or tried to block the door. Nobody had to cross a police line to enter the open door. During his time on the upper terrace, Mr. Goodwyn observed only peaceful activity. He used a bullhorn to tell others to go inside with him - he wanted to support the objections and electoral count. His intent was for voices to be heard in support of the Electoral Count process. Nobody listened to him, and nobody moved towards the open door. Video showed several nearby bystanders tell him or shake their heads "no."

Mr. Goodwyn entered the building through the Senate wing door where the noise level was loud. He sought an empty space so he could look around without being pushed. He did not hear the police officer by the doorway tell him to stop as he entered. The government asserted that the soundless CCTV video showed a police officer reaching out to Mr. Goodwyn. Mr. Goodwyn sensed some touch but did not know that a police officer was trying to grab him. Mr. Goodwyn went forward several yards and stopped when he reached an empty spot. He then saw a police cordon. The police officer from the doorway had chased after Mr. Goodwyn, and then grabbed him and ordered him to leave. Mr. Goodwyn admitted that at this point he knew he was not allowed to be present and complied. However, when hailed by a live streamer who was allowed to stay, Mr. Goodwyn had a very short dialogue, thus unlawfully remaining. The live streamer broadcast Mr. Goodwyn call the police

officer who ejected just him an "oath breaker." Mr. Goodwyn was inside the building for under a minute.

Mr. Goodwyn did not livestream while on the grounds or in the building. He experienced time delays in text message receipt, apparently caused by cell service interruptions or interference. He received or sent a few Instagram messages but did not post pictures. He had a few private text message communications with his brother, who was not in Washington D.C. None of his limited communications glorified or condoned violence. He was not aware of any violence until that evening after returning to his hotel.

Mr. Goodwyn did not have a computer on his person at the U.S. Capitol. He did not use any computer in any relation to his entry onto the Capitol grounds or for his time inside the building. His computer and phone were previously searched by the Federal Bureau of Investigation after January 15, 2021, with no finding of illicit or unlawful content. Mr. Goodwyn did not conduct on-line searches for the U.S. Capitol grounds or building diagrams. He did not use his computer to plan to violate any law. Nothing on Mr. Goodwyn's computer could be reasonably considered to be related to the "trespass" conduct that he was convicted for in violation of 18 U.S.C. § 1752(a)(1), Entering or Remaining in Restricted Grounds or a Building.

## II.  <u>**Proceedings and the Disposition**</u>:

Mr. Goodwyn was initially charged by a Complaint on January 15, 2021, for what the government refers to as "the four standard misdemeanors." These are 18 U.S.C. §§ 1752(a)(1) - (a)(2), Restricted Building or Grounds (ADD1); and 40 U.S.C. §§ 5104(e)(2)(D) and (G), respectively titled disorderly and disruptive conduct; and parading, demonstrating, or picketing in any of the Capitol buildings. Ultimately the government presented a second superseding indictment with the above four misdemeanors, and felony 18 U.S.C. § 1512(c)(2). Case 1:21-cr-00153 ECF No. 34.

After pretrial motions and the Defense's Notice of an Affirmative Defense for the § 1512(c)(2) felony charge, plea negotiations led to a plea offer and acceptance to the misdemeanor charge of § 1752(a)(1). A14-24.  The Statement of the Offense listed the standard mandatory government "Attack on the Capitol" paragraphs that declare the government's view of the January 6, 2021 events. Facts regarding Mr. Goodwyn's conduct and speech are contained in A27-31. His conduct included protected speech using his phone to communicate. He did not use a computer, and none of his speech or electronics use facilitated any crime. For example, he forwarded a CBS news report of the Electoral Count, he admitted he went inside, and he stated he did not break anything.

8

## SENTENCING HEARING DAY 1

Mr. Goodwyn's sentencing began on June 5, 2023. The oral arguments focused on sentencing memoranda topics about the amount of any fine, imprisonment, and supervised release. The government admitted it made a typographical error in demanding three years instead of the maximum one year of supervised release. It demanded a fine in excess of the statutory limit, wrongly claiming he profited from his crime when he is in fact in debt. The main argument was that Mr. Goodwyn answered Tucker Carlson's questions on a broadcast cable show in March 2023 about the video of his time inside the Capitol but did not take over the show to talk about any speech outside, where Mr. Goodwyn was under the belief he and others could legally enter through the open door as police watched. The Defense submitted its own sentencing memorandum at Case 1:21-cr-00153 ECF No. 105 on May 23, 2023 with proposed sentencing. The Defense argued against the Government's proposals in the Sentencing Memorandum and again at the Sentencing Hearing on June 5, 2023.

Neither the Government nor Probation Services discussed or recommended computer searches or monitoring in their documents or in statements in court on June 5, 2023. The Probation Services' restricted report to Judge Walton recommended probation and no prison, with no mention of computer monitoring. The Presentence Investigation Report, 1:21-cr-00153 at ECF No. 99 (Restricted) merely included

Probation Service's general statement that for supervised release conditions, the court *could impose* a condition that Mr. Goodwyn:

> submit to a search of [his] person, property, residence, adjacent structures, office, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), and other electronic communications or data storage devices or media, conducted by a U.S. Probation Officer. Failure to submit to a search may be grounds for revocation. . . . An officer may conduct a search pursuant to this condition only when *reasonable suspicion exists* that you have violated a condition of your release and/or that the area(s) or item(s) to be searched contain evidence of this violation or contain contraband. Any search must be conducted at a reasonable time and in a reasonable manner.

1:21-cr-00153, ECF No. 99 at 23. (Emphasis added).

The Court stated it needed to think overnight since it did not have experience with autism. The judge did not ask the Government or Defense to come back on June 6, 2023 prepared to discuss any topic, such as computer monitoring. The judge made no mention of computer monitoring, which was also not addressed in any sentencing memorandum, recommendation by any party, or oral argument.

### SENTENCING DAY 2 – JUNE 6, 2023

When the court reconvened on June 6, 2023, it was in transmit mode only as Judge Walton delivered the sentence. A42-54. In his delivery, Judge Walton began by asserting his view on the legitimacy of the 2020 election, in seeming chastisement of anyone who questioned illegalities and irregularities. He asserted thoughts in Mr. Goodwyn's head never before shown and contrary to Mr. Goodwyn's admissions.

10

A42-43. Judge Walton then attacked Tucker Carlson, claiming he creates discord through misinformation, with Mr. Goodwyn also responsible for misinformation. A44-45.

Mr. Goodwyn's entry into and exit from the U.S. Capitol encompassed all of about 40 seconds. But the government's version and the many minutes of interpretation it inserted about the short video was a topic the judge expected Mr. Goodwyn to talk about. All he was asked specifically regarding his crime of entering a restricted building was if did anything violent, did he hurt anyone, or did he break anything. Mr. Goodwyn answered "no" truthfully. The judge admonished Mr. Goodwyn for not talking about using a bullhorn outdoors even though Tucker Carlson only had CCTV indoor video, and was only discussing the crime for which Mr. Goodwyn pled guilty. As the center of the Court's attention, the unsourced video the Government displayed for the outdoors area showed that nobody moved to the door given Mr. Goodwyn's bullhorn speech. The judge expected that Mr. Goodwyn should have taken over Tucker Carlson's cable news show to talk about something Mr. Goodwyn was not charged with (i.e., public speech), that had no effect, and where the words he used were in the belief people could lawfully enter the door. Given a longer TV segment, the detail might have been addressed, even though it was a fact about conduct that did not relate to any element of the "trespass" crime.

The purpose of the TV segment was to provide the audience information on

how to help January 6 defendants whose lives, families, and businesses have been deliberately destroyed by the DOJ's method of prosecution. Prayer was among the options that Mr. Goodwyn presented. The judge's ire over Mr. Goodwyn not mentioning that he asked people to go in (and nobody did), moved to disparaging Mr. Goodwyn for his sympathy for the families who lost loved ones by police force.

After restricting firearms possession and requiring employment, Judge Walton then stated, without any facts in evidence, and no prior discussion or warning,

> And since he has used social media to provide what I consider disinformation about this situation, I would require that he permit his computer use to be subject to monitoring and inspection by the probation department to see if he is, in fact, disseminating information of the nature that relates to the events that resulted in what occurred on January 6, 2021.

Transcript A52:18-24.

The above had little chance of enactment given Probation Services' understanding of U.S. Supreme Court decisions that require reasonable suspicion of a crime before searches can be reasonable. This was shown in the Presentence Investigation Report language about searches discussed *supra*.

The judge announced that Mr. Goodwyn had the right to appeal his sentence. Transcript A53:6-7.

The monitoring order was a surprise to the Defense and at least the Probation Services representative. Despite Appellant's sentencing memorandum in and of itself

12

serving as an objection to any sentence and conditions outside of the Defense's recommendation, the above monitoring order lacks clarity and legal authority. The accusation of past social media use, and the "monitoring" search were the first items the Defense intended to address when given the opportunity to speak. However, when the undersigned started to address the matter, the judge interrupted and raised the issue of self-surrender. Transcript, A53:21-23. The discussion, with some argument, centered then on what level of security and prison the judge should include in his judgment order. The judge then closed the sentencing. Transcript A54:19-21.

Mr. Goodwyn intended to submit a motion for reconsideration with Probation Services and possibly Government consent to vacate the computer search language since no computer use was remotely or reasonably related to his trespass crime, and there is no federal law (yet) criminalizing "disinformation." There is no common definition of "disinformation." It originates from the old Soviet Union intelligence agency and the operational term "dezinformatsiya" (alternately maskirovka) for state-sponsored campaigns to deceive enemies. This shortly spread to media deception against the public. Common history shows that other nation states' intelligence agencies (the CIA, MI-6 to name two) copied the Soviets.[1] Mr.

---

[1] The concepts were schoolhouse instruction topics, generally known to all U.S. intelligence officers who served in the Cold War period. The definition today is not in U.S. law.

13

Goodwyn does not work for any U.S. intelligence agency or affiliate. Nor has he ever deliberately posted false information, if indeed that is what the judge meant.

The judge alternately used the term "misinformation." Merriam Webster defines "misinformation" as false or misleading information.[2] Multiple dictionaries distinguish "misinformation" and "disinformation" as different based on intent. Misinformation involves error or ignorance. Disinformation is deliberate. Neither is a crime by itself. U.S. laws use terms such as "fraud."

The motion for reconsideration became untenable upon entry of the Judgment Order (A32-39) on June, 16, 2023. This written Order included a new special condition of release not discussed at the sentencing hearing, including the June 6, 2023 verbal sentencing order. The without notice special condition mandates installation of unspecified software (and potentially hardware) for invasive surveillance and monitoring of all computer activity:

> To ensure compliance with the computer monitoring condition, you must allow the probation officer to conduct initial and periodic unannounced searches of any computers . . . subject to computer monitoring. These searches shall be conducted to determine whether the computer contains any prohibited data prior to the installation of the monitoring software, whether the monitoring software is functioning effectively after its installation, and whether there have been any attempts to circumvent the monitoring software . . . .

Order A37.

---

[2] Merriam-webster on-line at: https://www.merriam-webster.com/dictionary/misinformation (last visited September 1, 2023).

14

## SUMMARY OF THE ARGUMENT

### I.    ISSUE 1

The first argument concludes that the computer monitoring must be vacated because the district court abused  its discretion, and alternately clearly erred in ordering the special release condition of computer monitoring searches because there is no relation between computer or internet use and the crime for sentencing, with no history of abuse of computers or the internet that portend harm to the public. Computer monitoring software was designed for sex offenders as listed for *probation* under 18 U.S. Code § 3563, (where 18 U.S.C. Section 3583, Inclusion of a Term of Supervised Release after Imprisonment refers to § 3563).

The caselaw is consistent across circuits that computer monitoring and searches must be because a computer or internet access facilitated the crime being sentenced.

USSG §5D1.3 - Conditions of Supervised Release - provides clear standards for supervised release discretionary conditions, in which computer monitoring falls. For discretionary supervised release conditions, USSG §5D1.3(b) requires that the conditions:

> (1) are reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct;
> (C) the need to protect the public from further crimes of the defendant; and

15

(D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and
(2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above

USSG §5D1.3(b) (ADD5).

The computer search and monitoring sentence bears no reasonable relation to the nature and circumstances of the Section 1752 Restricted Grounds offense. No electronic device facilitated the offense. Further, the Court deigned the special condition as being for disinformation monitoring that has no relation to the Section 1752(a)(1) crime of entering a restricted building.

The above argument is bolstered by 18 U.S.C. § 3553(a), Imposition of a Sentence (ADD6), where the court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed -
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or . . . .

18 U.S.C. § 3553(a) (ADD6)

## II.    ISSUE 2

This argument addresses the First Amendment violations that will result if the search and monitoring Order is implemented.  The violations by the district court of

USSG §5D1.3(b) and 18 U.S.C. § 3553(a) in imposing the condition will amount to government censorship of content and viewpoint. The sentence is meant to chill speech, and compel the Appellant to speak the judge's and possibly the Supervisory Release Officer's beliefs. There can be no due process where the judge who can arbitrarily decide what is disinformation is the authority to revoke supervised release and add prison time for speech he disagrees with. The order is unconstitutionally vague as no person can know what violates supervisory release through arbitrary and undefined "disinformation." The searches and monitoring will cause loss of business as Mr. Goodwyn's business is centered around the internet with web design and then journalism that should afford privilege with sources and information content. The order is outside the authority of the judge.

## III.   ISSUE 3

This part of the argument addresses the Fourth Amendment violation that is imminent of Probation Services installs software to monitor computer use. The search requires no reasonable suspicion or probable cause that there is a crime. Mr. Goodwyn committed no crime involving a computer. Without warrant and reasonable suspicion, the government can unreasonably and continuously monitor everything Mr. Goodwyn does on his computer. The Order violates all the recent U.S. Supreme Court holdings on searches of personal electronic devices.

17

## ARGUMENT

A preliminary issue is whether Mr. Goodwyn may appeal given that he signed a plea agreement with rights' waivers. (A19-20).  Neither party breached the plea deal. Mr. Goodwyn is not appealing the prison sentence, fine, or period of supervised release - which most of the available caselaw addresses. The sentence appeal is based on an unreasonable special condition that must be vacated. The contract, i.e., the plea agreement, contained waivers that were knowing and voluntary in the expectation that sentencing would reasonable, and would fairly adhere to and fall within the USSG, policies, and relevant statutes. The district court did not impose a special condition of supervised release, specifically as related to computer and electronic device searches and monitoring, that are "reasonably related" to and in synch with factors set forth in 18 U.S.C. § 3553, the USSG, or 18 U.S.C. § 3583. The special condition has no relation to the offense, and the judge announced that the purpose was to monitor and search for disinformation speech.  The special condition also fails the statue requirements where it must involve "no greater deprivation of liberty than is reasonably necessary for the purposes identified in that section." *United States v. Malenya*, 736 F.3d 554, 559 (D.C. Cir. 2013). Citing 18 U.S.C. § 3583(d)(1), (2)).

After delivering a sentence with a surprise special condition that no party had requested, the judge stated that Mr. Goodwyn could appeal his sentence. (Transcript A53:6-7).

Here, the surprise addition by the judge of a special condition of release for computer and electronic device searches, with monitoring software installation based on no reasonable suspicion or probable cause related to a crime, and with no relation to the 18 U.S.C. Section 1752(a)(1) trespass crime that was the subject of sentencing, is substantively unreasonable. The court's exit from the guidelines and law now mandates an appeal because the rights waiver in the plea agreement contemplated nothing of the sort, and the condition is an abuse of discretion that embarrasses the judiciary and policies. Mr. Goodwyn cannot have been expected to imagine this special condition would be applied here. Those signing plea contracts accept risks regarding the court's sentence decision, but this case is not about that type of normal risk as discussed in *United States v. Guillen* , 561 F.3d 527, 529 (D.C. Cir. 2009) or *United States v. Lee*, 888 F.3d 503, 506 (D.C. Cir. 2018). Further, censoring speech by a form of coercion where the ambiguous "disinformation" decision can cause prison time serves no public purpose and violates the U.S. Constitution's First Amendment.

The second matter relates to whether the objection to the oral order's special condition for computer search/monitoring on June 6, 2021 (Transcript, A52:18-24) was preserved. The Appellant did preserve his claim of error under Fed. R. Crim P. Rule 52 by his sentencing memorandum, and the attorney and Appellant's oral argument and allocution respectively, where no party including Probation Services,

19

mentioned a special condition of supervised release, particularly computer searches and monitoring for "disinformation." Rule 52 states that a party preserves the claim of error by informing the court of its position when the court ruling is sought. Further, Rule 52 states that if a party does not have an opportunity to object to an order, the absence of an objection does not prejudice the party.

In this case, the special condition of release for computer search and monitoring came out of the blue with no opportunity to be heard as the Court adjourned. Then, when the Judgment Order was entered on June 16 through the ECF system (Order, A37), there was no opportunity to be heard about the new requirement for installation of software for monitoring. There was no notice that the court was considering such a condition of supervised release. There was no opportunity to be heard. However, because the sentencing memoranda from the parties show none asked for computer monitoring and searches, each demonstrated that they opposed such an unreasonable condition. "[A]ppellate review of sentencing decisions is limited to determining whether they are 'reasonable,' *United States v. Booker,* 543 U.S. 220, (2005). This Court has reiterated that in several cases. "There is no preservation requirement for reasonableness review." *United States v. Brown*, 808 F.3d 865, 870 (D.C. Cir. 2015). *See United States v. Bras,* 483 F.3d 103, 113 (D.C.Cir.2007).

Additionally,

> To insist that defendants object at sentencing to preserve
> appellate review for reasonableness would create a trap
> for unwary defendants. . . . Since the district court will
> already have heard argument and allocution from the parties
> and weighed the relevant § 3553(a) factors before pronouncing
> sentence, we fail to see how requiring the defendant to then
> protest the term handed down as unreasonable will further the
> sentencing process in any meaningful way.

*Bras*, 483 F.3d 103, 113. (quoting *United States v. Castro-Juarez*, 425 F.3d 430, 433-34 (7th Cir. 2005)).

Because of the above, Mr. Goodwyn has a valid appeal for this specific part of his sentence, to include for unconstitutionality, and the standard of review for the violation of the guidelines and statutes in Issue I is abuse of discretion with substantial unreasonableness, while Constitutional issues are reviewed de novo under the appropriate scrutiny standards.

## I.   The District Court Abused Its Discretion and Made a Mistake of Law by Ordering a Supervised Release Special Condition for Computer and Device Searches, with Monitoring for "Disinformation."

### A.  Standard of Review.

**The Normal Standard for Sentencing Appeals is "Reasonableness" and Abuse of Discretion**.

As the U.S. Supreme Court held, this Court repeated that, "We review sentences for abuse of discretion." *U.S. v. Love*, 593 F.3d 1, 6 (D.C. Cir. 2010); *See Gall v. United States*, 552 U.S. 38, 46, 128 S.Ct. 586 (2007). The standard goes

further in that "In such a review we ask 'whether the district court considered the prescribed factors and clearly articulated their effect on its decision.'" *United States v. Wright,* 6 F.3d 811, 813 (D.C.Cir. 1993).  See *United States v. Malenya*, 736 F.3d 554, 559 (D.C. Cir. 2013).

As happened in the present case, "An error of law occurs if the sentence results from a misapplication of the sentencing statutes - here 18 U.S.C. § 3553(a) - or the Sentencing Commission's guidelines or policy statements or if the court fails to adequately explain (for appellate review purposes) the reasons for the sentence it imposed." *Gall*, 552 U.S. at 51. Punishing speech and instituting spying cannot be assessed as an adequate explanation.

*Russell's* Court addressed the reasonableness standard after stating that objections when sentences are handed down are not required. "Substantive reasonableness is the catch-all criterion under which the reviewing court monitors (deferentially - for abuse of discretion) whether the district court has given reasonable weight to all the factors required to be considered." *U.S. v. Russell*, 600 F.3d 631, 633 (D.C. Cir. 2010).

If the Court were to decide the claim was not preserved under 18 U.S.C. Section 3553 (ADD 6) or 18 U.S.C. § 3583(d)(1), (A11) "the court of appeals can vacate the condition only if it is 'plainly out of sync with' the relevant statutory factors." *U.S. v. Burroughs*, 613 F.3d 233, 240 (D.C. Cir. 2010). Because there can

be no doubt here that "disinformation" is and was not any crime, let alone the one for sentencing, the condition of computer monitoring is clearly 'out of synch.' There can be no adequate explanation that gives any illusion of 'synch.'

**B. The Special Condition of Computer Searches and Monitoring in the Sentence Violates the Statutory Considerations and is an Abuse of Discretion.**

A majority of the appealed cases that involved computer monitoring were for a crime that involved child pornography or a similar threat to children.

The Burroughs case has similarities to Mr. Goodwyn's case. Burroughs did not use a computer to facilitate his crimes. The government searched his computer after arrest, and found nothing illegal. "Not knowing the court's reasons for imposing these conditions, finding the government's reasons unsupported by the record, and unable to identify any ourselves, we vacate the conditions as plainly out of sync with the relevant factors and remand for further proceedings." *U.S. v. Burroughs*, 613 F.3d 233, 242 (D.C. Cir. 2010). Likewise, *United States v. Perazza-Mercado*, 553 F.3d 65(2009) is analogous. The crime he was sentenced for had no relation to use of a computer or digital device. The courts across the circuits either remand or vacate special conditions where no digital device or Internet use facilitated the crime being sentenced.

The U.S. SENTENCING GUIDELINES MANUAL § 5D1.3(d)(7) (2007); *and* § 5D1.2 cmt. n. 1. specify that conditions "limiting the use of a computer or an interactive computer service make the list, but only in cases in which the

23

defendant used such items." *Id.* § 5D1.3(d)(7)(B). By implication, **restrictions on computer or Internet access are not *categorically* appropriate in cases where the defendant did not use them to facilitate his crime**." Burroughs, 613 F.3d at 242. "The government points to no facts making the computer restrictions reasonably related to the nature and circumstances of Burroughs's offense." *Id*. The situation has often recurred. "It is sufficient that the challenged conditions of supervised release are "plainly out of sync" with the factors listed in § 3583(d)(1). *U.S. v. Burroughs*, 613 F.3d 233, 244 (D.C. Cir. 2010)(quoting *Sullivan*, 451 F.3d at 895); *see also Olano*, 507 U.S. at 734.

Bans on Internet usage are draconian, and courts usually set those for criminals involved with running drug operations, wire fraud schemes, and especially those who entice children for pornography or sex. Courts recognize that in addition to employment requirements, people use the Internet for a myriad of legal activities such as paying bills, news and weather updates, and communications with friends and family. *Love,* 593 F.3d at 12. Surveilling internet activity and data on phones and computers exposes a person's life.  This circuit recognized the negative impact on liberty in *United States v. Malenya*, 736 F.3d 554, 560 (D.C. Cir. 2013). There is no indication that the district court considered the consequences to Mr. Goodwyn's privacy, and the negative impact this search and monitoring will have on his self-employment. One can easily imagine phone calls being disconnected when Mr.

24

Goodwyn tells a prospective client that all his web design or journalism will always have a back seat government passenger.

Mr. Goodwyn's sentence of computer search and monitoring must be examined under the statute as the overarching assessment tool for unreasonableness and abuse of discretion.

Pursuant to § 3583(d), the applicable, relevant conditions of supervised release to this case must:

[1] be reasonably related to at least one of the following: the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical, or other correctional needs.

[2] ... involve no greater deprivation of liberty than is reasonably necessary to achieve the purpose of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation.

[3] ... be consistent with any pertinent policy statements issued by the Sentencing Commission.

The special condition of supervised release mandating searches and the installation of monitoring software on Mr. Goodwyn's computer and devices is an abuse of discretion and is substantively unreasonable because there is no direct

relation to the crime he was sentenced under, it is a direct deprivation of his liberty, and it is unwarranted under the statutes and USSG.

His self-employment will be impeded, and his clients will not want the government surveilling them and their proprietary interests. These means serve no purpose besides government intimidation or a direct path to prison for protected speech. There is no legitimate reason under the USSG or statutes to impose this condition. Further, there is no standard for "disinformation." The decision can only be arbitrary.

The Tenth Circuit provides that "conditions of release that impinge on a defendant's ability to seek, obtain, and maintain employment are subject to "special scrutiny," the standards of which are set forth in U.S.S.G. § 5F1.5. *United States v. Dunn*, 777 F.3d 1171, 1177 (10th Cir. 2015)((Quoting *United States v. Butler,* 694 F.3d 1177, 1184 (10th Cir. 2012)).

Mr. Goodwyn's sentence result does not even approach the written words and intent of special conditions as envisioned by the USSG in its effort to implement what Congress seeks. In the United States Sentencing Guidelines Manual, "special conditions" may be imposed in the case of:

> (1) support of dependents. . . (2) debt obligations. . .
> (3) access to financial information. . . (4) substance abuse. . .
> (5) mental health. . . (6) deportation. . . (7) sex offenses. . .
> (8) unpaid restitution, fines, or special assessments. . .

*18 U.S.C.S. Appx.* § 5D1.3.

26

Mr. Goodwyn is not a sexual offender and not in a category where he must submit to a search, "at any time, with or without a warrant, and by any law enforcement or probation officer, of the defendant's person and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media. . ." *18 U.S.C.S. Appx.* § 5D1.3. Probations Services knows it must have reasonable suspicion or probable cause - and should obtain a warrant to search.

Because the special condition of the sentence strays outside the requirement for the computer monitoring and search condition to be directly related to the crime sentenced for, to include facilitation of the crime, the special condition should be vacated. It serves no purpose other than to violate the First and Fourth Amendments. It chills, if not stops, speech. While some software specifically identifies and flags computer users who visit certain websites or use particular language, the monitoring will operate like a hidden sword against protected speech and sensitive communications. There is no standard for what will violate the "disinformation" label. There is no software to identify "disinformation." The reasons for the condition are invalid. The condition should be removed.

## II.    <u>The Special Release Condition Violates the First Amendment</u>

The Free Speech Clause of the First Amendment states that Congress shall make no law abridging the freedom of speech, or of the press. U.S. Const. amend. I.

27

This applies to government officials whose acts and rules, while not law, abridge freedom of speech or the press. The government cannot compel speech. The government cannot censor speech that is not a national security threat during wartime in regard to troop locations, plans, and readiness.

 "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

## A. **Standard of Review**.

The standard for a Constitutional issue review is de novo, where here strict scrutiny must be applied because the monitoring is based on content and viewpoint discrimination. Mr. Goodwyn may not send out "disinformation," and potentially will be imprisoned if the district judge does not agree with his viewpoint.

Strict Scrutiny review requires the Government "to prove that the restriction furthers a *compelling interest* and is *narrowly tailored* to achieve that interest." *Arizona Free Enterprise Club's Freedom Club PAC* v. *Bennett*, 564 U. S. 721, 734, (2011). The government's purpose is the key. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791(1989).

28

**B. The Special Condition Requiring Searching and Monitoring for Disinformation Cannot Pass Strict Scrutiny.**

Whether a law, rule, or government agency policy is "content based on its face or when the purpose and justification for the law are content based, a court must evaluate each question before it concludes that the law is content neutral and thus subject to a lower level of scrutiny." *Reed v. Town of Gilbert*, 576 U.S. 155, 166 (2015).

The government cannot limit public forums based on viewpoint discrimination. Preventing discourse and disagreement is antithetical to free speech. "The right to free speech, of course, includes the right to attempt to persuade others to change their views, and may not be curtailed simply because the speaker's message may be offensive to his audience." *Hill v. Colo.*, 530 U.S. 703, 716 (2000). This holds as long as the audience can walk away if it finds something truly offensive.

In Mr. Goodwyn's case, there is implied censorship and the reason of the special condition in searching for and monitoring "disinformation" goes to a viewpoint; where based on that and vagueness, is facially invalid. Who determines "disinformation?" What is the compelling government interest that would require invasive spying by Probation Services, the DOJ, or judge to determine whether a post or chat discussion  involves a viewpoint that is different from the government's?

29

With no definition, anything can be disinformation. The court appears to want to replace the old twitter censors. Here, the Court's "cancellation" will equal prison time.

And why would the crime of trespass on the U.S. Capitol grounds or in the building require searches and monitoring for disinformation? Why is that crime more important than a mass shooting if neither involved the internet? There is no logic that can deliver a compelling reason in Mr. Goodwyn's case.

Narrow tailoring was not done here, mostly because nothing Mr. Goodwyn does on his computer involves violation of 18 U.S.C. Section 1752. The search and monitoring appear to be coercive threats to not speak. It is Orwellian. Mr. Goodwyn has no history of crime, let alone crime involving the internet, social media, or his electronic devices. The order appears to deliberately want to chill speech, as well as Mr. Goodwyn's right to work. His work, whether journalism or web site design is speech. He does not need a backseat spy element looking over every word.

Because the court, as government, cannot show a compelling interest to spy on Mr. Goodwyn and his clients, where the government has emplaced no restriction on itself, and appears to be enacting a prior restraint on speech, this Court should vacate the special condition of computer searches and monitoring.

"The framers designed the Free Speech Clause of the First Amendment to protect the 'freedom to think as you will and to speak as you think.'" *Boy Scouts of*

*America v. Dale*, [530 U.S. 640, 660-661](#) (2000). The district court should not be allowed to violate the most basic principles of the Free Speech clause. The government and court have no place in restraining speech, and enacting censorship and thought control.

## III. __The Special Release Condition Will Violate the Fourth Amendment__

### A. __Standard of Review__.

The standard for a Constitutional violation is de novo.

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.' *Brigham City* v. *Stuart*, 547 U. S. 398, 403, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006). . . Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant." *Vernonia School Dist. 47J v. Acton*, 515 U. S. 646, 653, 115 S. Ct. 2386, 132 L. Ed. 2d 564 (1995)." *Riley v. California*, 573 U.S. 373, 381-382 (2014).

### B. __The Warrantless Search and Monitoring of Mr. Goodwyn's Computer and Devices Violates the Fourth Amendment.__

Many of the same "reasonableness" arguments from "I" above apply here. There is no reasonable suspicion of criminal activity. There is no probable cause to search. The application of the release condition to Mr. Goodwyn is substantively unreasonable and a violation of his rights.

31

The government could not obtain anything but a general warrant - illegitimate - because it has no idea what disinformation is, and there is no "disinformation" crime just because the district court disagrees with the Appellant's viewpoints. Nothing about this searching and monitoring falls within an exception for a warrantless search.

Because there is nothing reasonable about an order that lets the government come into a home unrestrained, with no concept of what it is searching for, and to continuously spy with no justifiable reason, the order is an abuse of authority and the Constitution. and must be vacated.

## CONCLUSION

Because the special condition for supervision is not supported by law in its application here, and is a result of abuse of discretion and substantive unreasonableness; and because the release condition also violates the First and Fourth Amendments, the Court should vacate it.

Dated September 5, 2023                    Respectfully submitted,

/s/ Carolyn A. Stewart
Carolyn A. Stewart, Bar No. FL-0098
Appellant's Attorney
Stewart Country Law PA
1204 Swilley Rd.
Plant City, FL 33567
Tel: (813) 659-5178
Email: Carolstewart_esq@protonmail.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

COMES NOW, the Appellant, DANIEL GOODWYN, through undersigned counsel, and hereby certifies that his Brief, filed September 5, 2023:

1) complies with the word limits of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R . App. P. 32(f), it contains 7,286; words and

2) complies with the typeface requirements of Fed. Rd. App. P. 27(d)(1)(E) and 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6), because the Brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman in 14-point.

Respectfully submitted,

/s/ Carolyn Stewart
Carolyn Stewart
Defense/Appellant Counsel
Stewart Country Law PA

## CERTIFICATE OF SERVICE

I hereby certify on the 5th day of SEPTEMBER 2023, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

On this same date, the original and additional copies of the foregoing brief were filed by overnight delivery, postage prepaid, addressed as follows:

Clerk's Office—Appeal No. 23-3106
U.S. Court of Appeals for the D.C. Circuit
E. Barrett Prettyman U.S. Courthouse
333 Constitution Ave., NW
Washington, DC 20001

/s/ Carolyn Stewart
Carolyn Stewart, Esq.

# ADDENDUM

## TABLE OF CONTENTS

**Page**

18 U.S.C. § 1752 Restricted Grounds................................................................. ADD1

§5D1.3 - Conditions of Supervised Release...................................................... ADD3

18 U.S.C. § 3553 Imposition of a Sentence...................................................... ADD6

18 U.S.C. § 3583 Inclusion of a Term of Supervised Release........................ADD11

# 18 U.S.C. § 1752

Section 1752 - Restricted building or grounds

**(a)** Whoever-

**(1)** knowingly enters or remains in any restricted building or grounds without lawful authority to do so;

**(2)** knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;

**(3)** knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions, obstructs or impedes ingress or egress to or from any restricted building or grounds; or [1]

**(4)** knowingly engages in any act of physical violence against any person or property in any restricted building or grounds; [2]

**(5)** knowingly and willfully operates an unmanned aircraft system with the intent to knowingly and willfully direct or otherwise cause such unmanned aircraft system to enter or operate within or above a restricted building or grounds;
or attempts or conspires to do so, shall be punished as provided in subsection (b).

**(b)** The punishment for a violation of subsection (a) is-

**(1)** a fine under this title or imprisonment for not more than 10 years, or both, if-

**(A)** the person, during and in relation to the offense, uses or carries a deadly or dangerous weapon or firearm; or

**(B)** the offense results in significant bodily injury as defined by section 2118(e)(3); and

**(2)** a fine under this title or imprisonment for not more than one year, or both, in any other case.

**(c)** In this section-

**(1)** the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area-

**(A)** of the White House or its grounds, or the Vice President's official residence or its grounds;

**(B)** of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or

**(C)** of a building or grounds so restricted in conjunction with an event designated as a special event of national significance; and

 casetext

1

**ADD1**

**(2)** the term "other person protected by the Secret Service" means any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection.

[1] So in original. The word "or" probably should not appear.

[2] So in original. Probably should be followed by "or".

*18 U.S.C. § 1752*

Added Pub. L. 91-644, title V, §18, Jan. 2, 1971, 84 Stat. 1891; amended Pub. L. 97-308, §1, Oct. 14, 1982, 96 Stat. 1451; Pub. L. 98-587, §3(b), Oct. 30, 1984, 98 Stat. 3112; Pub. L. 103-322, title XXXIII, §330016(1)(G), Sept. 13, 1994, 108 Stat. 2147; Pub. L. 109-177, title VI, §602(a), (b) (1), Mar. 9, 2006, 120 Stat. 252; Pub. L. 112-98, §2, Mar. 8, 2012, 126 Stat. 263; Pub. L. 115-254, div. B, title III, §381, Oct. 5, 2018, 132 Stat. 3320.

*EDITORIAL NOTES*

*AMENDMENTS 2018-Subsec. (a)(5). Pub. L. 115-254 added par. (5). **2012**- Pub. L. 112-98 amended section generally. Prior to amendment, section related to unlawful activities on restricted buildings or grounds. **2006**-Pub. L. 109-177, §602(b)(1), substituted "Restricted building or grounds" for "Temporary residences and offices of the President and others" in section catchline. Subsec. (a)(1). Pub. L. 109-177, §602(a)(1)(A), amended par. (1) generally. Prior to amendment, par. (1) read as follows: "willfully and knowingly to enter or remain in"(i) any building or grounds designated by the Secretary of the Treasury as temporary residences of the President or other person protected by the Secret Service or as temporary offices of the President and his staff or of any other person protected by the Secret Service, or"(ii) any posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting,in violation of the regulations governing ingress or egress thereto:".Subsec. (a)(2). Pub. L. 109-177, §602(a)(1)(C), added par. (2). Former par. (2) redesignated (3). Subsec. (a)(3). Pub. L. 109-177, §602(a)(1)(B), (D), redesignated par. (2) as (3), inserted "willfully, knowingly, and" before "with intent to impede or disrupt", and substituted "described in paragraph (1) or (2)" for "designated in paragraph (1)". Former par. (3) redesignated (4). Subsec. (a)(4), (5). Pub. L. 109-177, §602(a)(1)(B), (E), (F), redesignated pars. (3) and (4) as (4) and (5), respectively, and substituted "described in paragraph (1) or (2)" for "designated or enumerated in paragraph (1)" in each par.Subsec. (b). Pub. L. 109-177, §602(a)(2), amended subsec. (b) generally. Prior to amendment, subsec. (b) read as follows: "Violation of this section, and attempts or conspiracies to commit such violations, shall be punishable by a fine under this title or imprisonment not exceeding six months, or both."Subsecs. (d) to (f). Pub. L. 109-177, §602(a)(3), redesignated subsecs. (e) and (f) as (d) and (e), respectively, and struck out former subsec. (d) which read as follows: "The Secretary of the Treasury is authorized-"(1) to designate by regulations the buildings and grounds which constitute the temporary residences of the President or other person protected by the Secret Service and the temporary offices of the President and his staff or of any other person protected by the Secret Service, and"(2) to prescribe regulations governing ingress or egress to such buildings and grounds and to posted, cordoned off, or otherwise restricted areas where the President or other person protected by the Secret Service is or will be temporarily visiting."**1994**-Subsec. (b). Pub. L. 103-322 which directed the amendment of this section by substituting "under this title" for "not more than $500", was executed in subsec. (b) by substituting "under this title" for "not exceeding $500" to reflect the probable intent of Congress.**1984**-Subsec. (f). Pub. L. 98-587 amended subsec. (f) generally, substituting "any person whom the United States Secret Service is authorized to protect under section 3056 of this title when such person has not declined such protection" for "any person authorized by section 3056 of this title or by Public Law 90-331 as amended, to receive the protection of the United States Secret Service when such person has not declined such protection pursuant to section 3056 of this*

 casetext

2

**ADD2**

# Guidelines Manual

2021

GUIDELINES MANUAL

CHAPTER FIVE

PART D - SUPERVISED RELEASE

§5D1.3 - CONDITIONS OF SUPERVISED RELEASE

## CHAPTER FIVE

## Determining the Sentence

BOOKMARK THIS

### §5D1.3 - CONDITIONS OF SUPERVISED RELEASE

(a) MANDATORY CONDITIONS

(1) The defendant shall not commit another federal, state or local offense (*see* 18 U.S.C. § 3583(d)).

(2) The defendant shall not unlawfully possess a controlled substance (*see* 18 U.S.C. § 3583(d)).

USCA Case #23-3106     Document #2015295     Filed: 09/05/2023     Page 49 of 59

(3) The defendant who is convicted for a domestic violence crime as defined in 18 U.S.C. § 3561(b) for the first time shall attend a public, private, or private non-profit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic Violence or other appropriate experts, if an approved program is available within a 50-mile radius of the legal residence of the defendant (*see* 18 U.S.C. § 3583(d)).

(4) The defendant shall refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on supervised release and at least two periodic drug tests thereafter (as determined by the court) for use of a controlled substance, but the condition stated in this paragraph may be ameliorated or suspended by the court for any individual defendant if the defendant's presentence report or other reliable information indicates a low risk of future substance abuse by the defendant (*see* 18 U.S.C. § 3583(d)).

(5) If a fine is imposed and has not been paid upon release to supervised release, the defendant shall adhere to an installment schedule to pay that fine (*see* 18 U.S.C. § 3624(e)).

(6) The defendant shall (A) make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A, or any other statute authorizing a sentence of restitution; and (B) pay the assessment imposed in accordance with 18 U.S.C. § 3013. If there is a court-established payment schedule for making restitution or paying the assessment (*see* 18 U.S.C. § 3572(d), the defendant shall adhere to the schedule.

(7) If the defendant is required to register under the Sex Offender Registration and Notification Act, the defendant shall comply with the requirements of that Act (*see* 18 U.S.C. § 3583(d)).

(8) The defendant shall submit to the collection of a DNA sample from the defendant at the direction of the United States Probation Office if the collection of such a sample is authorized pursuant to section 3 of the DNA

**ADD4**

Analysis Backlog Elimination Act of 2000 (34 U.S.C. § 40702).

(b) DISCRETIONARY CONDITIONS

The court may impose other conditions of supervised release to the extent that such conditions (1) are reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission.

(c) "STANDARD" CONDITIONS (POLICY STATEMENT)

The following "standard" conditions are recommended for supervised release. Several of the conditions are expansions of the conditions required by statute:

> (1) The defendant shall report to the probation office in the federal judicial district where he or she is authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs the defendant to report to a different probation office or within a different time frame.

> (2) After initially reporting to the probation office, the defendant will receive instructions from the court or the probation officer about how and when to report to the probation officer, and the defendant shall report to the probation officer as instructed.

> (3) The defendant shall not knowingly leave the federal judicial district where he or she is authorized to reside without first getting permission from the court or the probation officer.

> (4) The defendant shall answer truthfully the questions asked by the probation officer.

# 18 U.S.C. § 3553

Section 3553 - Imposition of a sentence

**(a)** FACTORS TO BE CONSIDERED IN IMPOSING A SENTENCE.-The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider-

  **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

  **(2)** the need for the sentence imposed-

    **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    **(B)** to afford adequate deterrence to criminal conduct;

    **(C)** to protect the public from further crimes of the defendant; and

    **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

  **(3)** the kinds of sentences available;

  **(4)** the kinds of sentence and the sentencing range established for-

    **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines-

      **(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

      **(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

    **(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

  **(5)** any pertinent policy statement-

    **(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**ADD6**

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.[1]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

**(b)** APPLICATION OF GUIDELINES IN IMPOSING A SENTENCE.-

**(1)** IN GENERAL.-Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

**(2)** CHILD CRIMES AND SEXUAL OFFENSES.-

**(A)**[2] SENTENCING.-In sentencing a defendant convicted of an offense under section 1201 involving a minor victim, an offense under section 1591, or an offense under chapter 71, 109A, 110, or 117, the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless-

  **(i)** the court finds that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence greater than that described;

  **(ii)** the court finds that there exists a mitigating circumstance of a kind or to a degree, that-

    **(I)** has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, taking account of any amendments to such sentencing guidelines or policy statements by Congress;

    **(II)** has not been taken into consideration by the Sentencing Commission in formulating the guidelines; and

    **(III)** should result in a sentence different from that described; or

  **(iii)** the court finds, on motion of the Government, that the defendant has provided substantial assistance in the investigation or prosecution of another person who has

**ADD7**

committed an offense and that this assistance established a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence lower than that described.

In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission, together with any amendments thereto by act of Congress. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission, together with any amendments to such guidelines or policy statements by act of Congress.

**(c)** STATEMENT OF REASONS FOR IMPOSING A SENTENCE.-The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence-

**(1)** is of the kind, and within the range, described in subsection (a)(4), and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range; or

**(2)** is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in a statement of reasons form issued under section 994(w)(1)(B) of title 28, except to the extent that the court relies upon statements received in camera in accordance with Federal Rule of Criminal Procedure 32. In the event that the court relies upon statements received in camera in accordance with Federal Rule of Criminal Procedure 32 the court shall state that such statements were so received and that it relied upon the content of such statements.

If the court does not order restitution, or orders only partial restitution, the court shall include in the statement the reason therefor. The court shall provide a transcription or other appropriate public record of the court's statement of reasons, together with the order of judgment and commitment, to the Probation System and to the Sentencing Commission,,[3] and, if the sentence includes a term of imprisonment, to the Bureau of Prisons.

**(d)** PRESENTENCE PROCEDURE FOR AN ORDER OF NOTICE.-Prior to imposing an order of notice pursuant to section 3555, the court shall give notice to the defendant and the Government that it is considering imposing such an order. Upon motion of the defendant or the Government, or on its own motion, the court shall-

**(1)** permit the defendant and the Government to submit affidavits and written memoranda addressing matters relevant to the imposition of such an order;



**ADD8**

Section 3553 - Imposition of sentence          18 U.S.C. § 3553

**(2)** afford counsel an opportunity in open court to address orally the appropriateness of the imposition of such an order; and

**(3)** include in its statement of reasons pursuant to subsection (c) specific reasons underlying its determinations regarding the nature of such an order.
Upon motion of the defendant or the Government, or on its own motion, the court may in its discretion employ any additional procedures that it concludes will not unduly complicate or prolong the sentencing process.

**(e)** LIMITED AUTHORITY TO IMPOSE A SENTENCE BELOW A STATUTORY MINIMUM.-Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

**(f)** LIMITATION ON APPLICABILITY OF STATUTORY MINIMUMS IN CERTAIN CASES.-Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act ( 21 U.S.C. 841, 844, 846 ), section 1010 or 1013 of the Controlled Substances Import and Export Act ( 21 U.S.C. 960, 963 ), or section 70503 or 70506 of title 46, the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that-

**(1)** the defendant does not have-

**(A)** more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

**(B)** a prior 3-point offense, as determined under the sentencing guidelines; and

**(C)** a prior 2-point violent offense, as determined under the sentencing guidelines;

**(2)** the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

**(3)** the offense did not result in death or serious bodily injury to any person;

**(4)** the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

**(5)** not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or



that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement. Information disclosed by a defendant under this subsection may not be used to enhance the sentence of the defendant unless the information relates to a violent offense.

**(g)** DEFINITION OF VIOLENT OFFENSE.-As used in this section, the term "violent offense" means a crime of violence, as defined in section 16, that is punishable by imprisonment.

[1] So in original. The period probably should be a semicolon.

[2] So in original. No subpar. (B) has been enacted.

[3] So in original.

*18 U.S.C. § 3553*

Added Pub. L. 98-473, title II, §212(a)(2), Oct. 12, 1984, 98 Stat. 1989; amended Pub. L. 99-570, title I, §1007(a), Oct. 27, 1986, 100 Stat. 3207-7; Pub. L. 99-646, §§8(a), 9(a), 80(a), 81(a), Nov. 10, 1986, 100 Stat. 3593, 3619; Pub. L. 100-182, §§3, 16(a), 17, Dec. 7, 1987, 101 Stat. 1266, 1269, 1270; Pub. L. 100-690, title VII, §7102, Nov. 18, 1988, 102 Stat. 4416; Pub. L. 103-322, title VIII, §80001(a), title XXVIII, §280001, Sept. 13, 1994, 108 Stat. 1985, 2095; Pub. L. 104-294, title VI, §§601(b)(5), (6), (h), Oct. 11, 1996, 110 Stat. 3499, 3500; Pub. L. 107-273, div. B, title IV, §4002(a)(8), Nov. 2, 2002, 116 Stat. 1807; Pub. L. 108-21, title IV, §401(a), (c), (j) (5), Apr. 30, 2003, 117 Stat. 667, 669, 673; Pub. L. 111-174, §4, May 27, 2010, 124 Stat. 1216; Pub. L. 115-391, title IV, §402(a), Dec. 21, 2018, 132 Stat. 5221.

*EDITORIAL NOTES*

*REFERENCES IN TEXT* The Federal Rules of Criminal Procedure, referred to in subsec. (c)(2), are set out in the Appendix to this title. Section 408 of the Controlled Substances Act, referred to in subsec. (f)(4), is classified to section 848 of Title 21, Food and Drugs.

*CONSTITUTIONALITY* For information regarding the constitutionality of certain provisions of this section, as amended by section 401(a)(1) of Pub. L. 108-21 see the Table of Laws Held Unconstitutional in Whole or in Part by the Supreme Court on the Constitution Annotated website, constitution.congress.gov.

*AMENDMENTS* **2018**-Subsec. (f). Pub. L. 115-391, §402(a)(1)(A), (C), in introductory provisions, substituted ", section 1010" for "or section 1010" and inserted ", or section 70503 or 70506 of title 46" after "963)", and inserted concluding provisions. Subsec. (f)(1). Pub. L. 115-391, §402(a)(1)(B), added par. (1) and struck out former par. (1) which read as follows: "the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;".Subsec. (g). Pub. L. 115-391, §402(a)(2), added subsec. (g). **2010**-Subsec. (c)(2). Pub. L. 111-174 substituted "a statement of reasons form issued under section 994(w)(1)(B) of title 28" for "the written order of judgment and commitment". **2003**-Subsec. (a)(4)(A). Pub. L. 108-21, §401(j)(5)(A), amended subpar. (A) generally. Prior to amendment, subpar. (A) read as follows: "the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or". Subsec. (a)(4)(B). Pub. L. 108-21, §401(j)(5)(B), inserted before semicolon at end ", taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued

 casetext

**ADD010**

# 18 U.S.C. § 3583

Section 3583 - Inclusion of a term of supervised release after imprisonment

**(a)** IN GENERAL.-The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment, except that the court shall include as a part of the sentence a requirement that the defendant be placed on a term of supervised release if such a term is required by statute or if the defendant has been convicted for the first time of a domestic violence crime as defined in section 3561(b).

**(b)** AUTHORIZED TERMS OF SUPERVISED RELEASE.-Except as otherwise provided, the authorized terms of supervised release are-

  **(1)** for a Class A or Class B felony, not more than five years;

  **(2)** for a Class C or Class D felony, not more than three years; and

  **(3)** for a Class E felony, or for a misdemeanor (other than a petty offense), not more than one year.

**(c)** FACTORS TO BE CONSIDERED IN INCLUDING A TERM OF SUPERVISED RELEASE.-The court, in determining whether to include a term of supervised release, and, if a term of supervised release is to be included, in determining the length of the term and the conditions of supervised release, shall consider the factors set forth in section 3553(a) (1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

**(d)** CONDITIONS OF SUPERVISED RELEASE.-The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision, that the defendant make restitution in accordance with sections 3663 and 3663A, or any other statute authorizing a sentence of restitution, and that the defendant not unlawfully possess a controlled substance. The court shall order as an explicit condition of supervised release for a defendant convicted for the first time of a domestic violence crime as defined in section 3561(b) that the defendant attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic Violence or other appropriate experts, if an approved program is readily available within a 50-mile radius of the legal residence of the defendant. The court shall order, as an explicit condition of supervised release for a person required to register under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act. The court shall order, as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance. The condition stated in the preceding sentence may be ameliorated or suspended by the court as provided in section

3563(a)(4).[1] The results of a drug test administered in accordance with the preceding subsection shall be subject to confirmation only if the results are positive, the defendant is subject to possible imprisonment for such failure, and either the defendant denies the accuracy of such test or there is some other reason to question the results of the test. A drug test confirmation shall be a urine drug test confirmed using gas chromatography/mass spectrometry techniques or such test as the Director of the Administrative Office of the United States Courts after consultation with the Secretary of Health and Human Services may determine to be of equivalent accuracy. The court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test. The court may order, as a further condition of supervised release, to the extent that such condition-

**(1)** is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

**(2)** involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

**(3)** is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);
any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate, provided, however that a condition set forth in subsection 3563(b)(10) shall be imposed only for a violation of a condition of supervised release in accordance with section 3583(e)(2) and only when facilities are available. If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation. The court may order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

**(e)** MODIFICATION OF CONDITIONS OR REVOCATION.-The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)-

**(1)** terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice;

 casetext

**ADD12**

2

**(2)** extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision;

**(3)** revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case; or

**(4)** order the defendant to remain at his place of residence during nonworking hours and, if the court so directs, to have compliance monitored by telephone or electronic signaling devices, except that an order under this paragraph may be imposed only as an alternative to incarceration.

**(f)** WRITTEN STATEMENT OF CONDITIONS.-The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

**(g)** MANDATORY REVOCATION FOR POSSESSION OF CONTROLLED SUBSTANCE OR FIREARM OR FOR REFUSAL TO COMPLY WITH DRUG TESTING.-If the defendant-

**(1)** possesses a controlled substance in violation of the condition set forth in subsection (d);

**(2)** possesses a firearm, as such term is defined in section 921 of this title, in violation of Federal law, or otherwise violates a condition of supervised release prohibiting the defendant from possessing a firearm;

**(3)** refuses to comply with drug testing imposed as a condition of supervised release; or

**(4)** as a part of drug testing, tests positive for illegal controlled substances more than 3 times over the course of 1 year;

the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3).



**ADD13**

**(h)** SUPERVISED RELEASE FOLLOWING REVOCATION.-When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

**(i)** DELAYED REVOCATION.-The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

**(j)** SUPERVISED RELEASE TERMS FOR TERRORISM PREDICATES.-Notwithstanding subsection (b), the authorized term of supervised release for any offense listed in section 2332b(g)(5)(B) is any term of years or life.

**(k)** Notwithstanding subsection (b), the authorized term of supervised release for any offense under section 1201 involving a minor victim, and for any offense under section 1591, 1594(c), 2241, 2242, 2243, 2244, 2245, 2250, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, 2423, or 2425, is any term of years not less than 5, or life. If a defendant required to register under the Sex Offender Registration and Notification Act commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed, the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment under subsection (e)(3) without regard to the exception contained therein. Such term shall be not less than 5 years.

[1] See References in Text note below.

*18 U.S.C. § 3583*

Added Pub. L. 98-473, title II, §212(a)(2), Oct. 12, 1984, 98 Stat. 1999; amended Pub. L. 99-570, title I, §1006(a)(1)-(3), Oct. 27, 1986, 100 Stat. 3207-6; Pub. L. 99-646, §14(a), Nov. 10, 1986, 100 Stat. 3594; Pub. L. 100-182, §§8, 9, 12, 25, Dec. 7, 1987, 101 Stat. 1267, 1268, 1272; Pub. L. 100-690, title VII, §§7108, 7303(b), 7305(b), Nov. 18, 1988, 102 Stat. 4418, 4464, 4465; Pub. L. 101-647, title XXXV, §35893589,, 104 Stat. 4930; Pub. L. 103-322, title II, §20414(c), title XI, §110505, title XXXII, §320921(c), Sept. 13, 1994, 108 Stat. 1831, 2016, 2130; Pub. L. 105-119, title I, §115(a)(8)(B)(iv), Nov. 26, 1997, 111 Stat. 2466; Pub. L. 106-546, §7(b), Dec. 19, 2000, 114 Stat. 2734; Pub. L. 107-56, title VIII, §812, Oct. 26, 2001, 115 Stat. 382; Pub. L. 107-273, div. B, title II, §2103(b), title III, §3007, Nov. 2, 2002, 116 Stat. 1793, 1806; Pub. L. 108-21, title I, §101, Apr. 30, 2003, 117 Stat. 651; Pub. L. 109-164, title II, §209(d), formerly Pub. L. 114-22, title I, §114(d), May 29, 2015, 129 Stat. 242, renumbered §209(d) of Pub. L. 109-164 by Pub. L. 117-347, title I, §106(b)(1), Jan. 5, 2023, 136 Stat. 6204; Pub. L. 109-177, title II, §212, Mar. 9, 2006, 120 Stat. 230; Pub. L. 109-248, title I, §141(e), title II, §210(b), July 27, 2006, 120 Stat. 603,



**ADD14**