UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

No. 23-3106

———————————

UNITED STATES OF AMERICA,                                  Appellee,

    v.

DANIEL GOODWYN,                                           Appellant.

## UNITED STATES' MOTION FOR REMAND

Appellee, the United States of America, respectfully moves to remand this case to allow further findings and clarification by the district court regarding a condition of supervised release prohibiting the dissemination by computer of "disinformation." Appellant Daniel Goodwyn participated in the January 6, 2021, riot at the United States Capitol, using a bullhorn to incite other rioters to storm the Capitol and, once inside, ignoring an officer's orders to exit the Capitol. But in a televised interview just a few weeks after his guilty plea, Goodwyn called himself a "political hostage" and allowed himself to be portrayed as someone who merely wandered around the Capitol for less than a minute.

Convicted of entering or remaining in a restricted building or grounds, Goodwyn was sentenced by the Honorable Reggie B. Walton to a 60-day term of imprisonment, to be followed by a 12-month term of supervised release. After viewing Goodwyn's post-riot interview at sentencing and observing Goodwyn's failure to disclose his true role on January 6, the district court imposed a supervised release condition requiring computer monitoring and inspection by the Probation Office to ensure that Goodwyn is not disseminating "disinformation."

In exercising its broad discretion to impose special supervised release conditions, the district court failed to make particularized findings that this condition was "reasonably related" to the statutory sentencing goals and failed to ensure that the condition did not result in any "greater deprivation of liberty" than is "reasonably necessary" to meet these goals. Therefore, the government respectfully requests that the Court remand the case to the district court to make the appropriate statutory findings and clarify the scope of the supervised release condition. *See e.g., United States v. Stanfield*, 360 F.3d 1346, 1354 (D.C. Cir. 2004) (remanding to allow the district court to clarify the scope of a supervised release internet restriction).

# Background

## Plea and Offense Conduct

For his conduct during the January 6, 2021, attack on the Capitol, Goodwyn pleaded guilty pursuant to a written plea agreement to entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Appendix for Appellant (A.) 14). In his statement of offense, Goodwyn admitted:

• On January 1, 2021, Goodwyn traveled from San Francisco to Washington, D.C. to protest Congress' certification of the Electoral College (A. 27). In the weeks before this journey, he posted comments on social media about the Proud Boys, "StopTheSteal," and fighting for Trump (A. 27).

• On January 6, Goodwyn attended the "Stop the Steal" rally and then marched with other protestors to the Capitol (A. 28). Between 2 p.m. and 4 p.m., Goodwyn was a part of the crowd that had gathered on the northern Lower West Terrace (A. 28).

• While there, Goodwyn used a bullhorn someone handed him to encourage others to enter the Capitol, stating, "Behind me, the door is open," "we need you to push forward, forward," "we need critical mass for this to work," and "Go behind me and go in" (A. 28).

• Goodwyn entered the Capitol through the open Senate Wing door at 3:32 p.m. and left around 36 seconds after he entered. As he entered, an officer reached out and touched him, but Goodwyn continued inside the Capitol. While exiting the Capitol, Goodwyn was called out as "sfthoughtcriminal" by Anthime Gionet, aka "Baked Alaska," who was inside the Capitol livestreaming his broadcast. Goodwyn slowed down and paused to identify himself on the video as "Daniel Goodwyn" after being told to leave the building by a law enforcement officer. As Goodwyn

left, he told others nearby that the officer was an "Oathbreaker" and to get his badge number (A. 28-30).

• Goodwyn later sent several text messages, including one acknowledging that he went inside the Capitol and another saying that "Patriots rushed the Capitol" (A. 30-31). That evening, in response to DrewHLive's Twitter status, Goodwyn tweeted, "They WANT a revolution. They're proving our point. They don't represent us. They hate us." (A. 31.)

## Sentencing

The Presentence Investigation Report (PSR) calculated Goodwyn's total offense level as 4, and with a criminal history category of I, his advisory guidelines imprisonment range was 0-6 months (PSR at ¶¶ 46, 49, 107).

The PSR recommended several special conditions of supervised release. Among the conditions was a consent to search computers and "other electronic communications or data storage devices or media" (PSR at ¶ 118(g)). But the proposed conditions did not elaborate on or specify any content or social media restrictions.

On June 5, 2023, the first day of sentencing, the court resolved PSR objections and adopted the PSR calculations (Supplemental Appendix (Supp. A.) 2-13). Then, in support of its sentencing request, the government played several video clips of Goodwyn's actions on January

4

6, including clips showing Goodwyn using a bullhorn to urge rioters to enter the Capitol (Supp. A. 14-15), and clips showing him inside the Capitol ignoring a police officer's efforts to make him exit the area (Supp. A. 15-20).

The government also played video of Goodwyn's televised interview with Tucker Carlson in which he minimized his January 6 conduct less than two months after pleading guilty (Supp. A. 22-26). During the interview, Goodwyn allowed Carlson to portray him as having simply walked in and out of the Capitol. Goodwyn did not disclose that he had used a bullhorn to urge rioters to enter the Capitol or that he had ignored police commands to exit the Capitol. And Goodwyn characterized himself as a "political hostage" (Supp. A. 23). He also depicted himself as a victim and solicited donations for himself and other January 6 rioters (Supp. A. 25-30).

Defense counsel, who had attended the televised interview with Goodwyn, objected to the government's argument that he had minimized his conduct by failing to correct Tucker Carlson's depiction of him as being unfairly prosecuted (Supp. A. 24). She explained that Goodwyn did not have time during the interview either to correct Carlson's portrayal

5

of him as an innocent victim of government overreach who called all January 6 protesters political prisoners, or to explain that his fundraising request was simply an effort to help other protesters and to pay his own legal fees (Supp. A. 42-51). But the court rejected that characterization and expressed concern that the interview contributed to misinformation about the January 6 riot (Supp. A. 24-25, 49).

Defense counsel described Goodwyn as a good Christian who was remorseful and had suffered personally and financially since January 6. She stressed that he suffers from Asperger's syndrome, a high-functioning autism that affects how he perceives things, and she theorized that his autism affected his actions on January 6 and his ability to recognize that he was not permitted in the Capitol (Supp. A. 33-42, 46-49).

In his allocution, Goodwyn stated that he was remorseful and argued that his conduct should be viewed through the lens of his autism. He described the stress from his arrest and home confinement and the adverse financial consequences he suffered (Supp. A. 51-58). Goodwyn expressed sympathy for rioters instead of law enforcement officers (Supp. A. 59-64).

The court doubted that Goodwyn's autism affected his ability to perceive the wrongfulness of using a bullhorn to encourage rioters to enter the Capitol (Supp. A. 57-59). And the court criticized Goodwyn's focus on purportedly innocent protestors while showing no compassion for police (Supp. A. 59-64). The court recessed the sentencing until the next day to consider what effect Goodwyn's autism should have on sentencing (Supp. A. 64).

When the sentencing hearing resumed, the court imposed a 60-day imprisonment term (with credit for 21 days of time served), followed by a 12-month supervised release term, $500 in restitution, and a $2,500 fine (A. 51-53). The court rejected Goodwyn's arguments that his autism affected his behavior or merited a lesser sentence and emphasized that Goodwyn's lack of candor during the Tucker Carlson interview contributed to the misinformation fostering dissention in the country:

> The defendant after he entered a plea of guilty, within several months, then appears on the Tucker Carlson show. And, unfortunately, Mr. Carlson has been a lightning rod and he has said and done things that I think clearly have been divisive. And he, obviously, had an objective in the show that he had when the defendant appeared on that show. And that was to give the impression that individuals who have been charged in reference to the events on January 6th of '21 have been treated unfairly. And I see no evidence that, in fact, was the case.

7

But he sought to try and minimize, not only the conduct of the defendant, but the conduct of others who have been prosecuted as a result of what took place on that day. And counsel suggests that the defendant did not have the opportunity to correct the record. But he made no attempt to correct the record. And when Carlson suggested that all the defendant did was go into the Capitol and walk around for less than a minute and leave, that just wasn't correct.

And that misinformation that is disseminated to the American public has contributed to the discord that now exists in our country in reference to the presidential election and what occurred on January 6th. And there are people who are proclaiming that the individuals who have been prosecuted, who are being detained as a result of that are being held as political prisoners. And there is just nothing that supports that proposition.

But, nonetheless, it is something that parts of the media have sought to portray. And as a result of that have, in fact, continued to stir up the anger that people have resulting from the misinformation that has been disseminated to the American public about the events that took place on January 6th of '21.

And the defendant did not mention the fact that he was on the bullhorn encouraging people to breach the Capitol, which clearly he did when he made his statements. And he did not relate the fact that when he got to the door. And it was clear to me from the evidence that the government submitted, the videos, that when he was at the door, it is clear, considering what took place immediately thereafter, that the police officer who had directed his attention to the defendant, for whatever reason, was saying to the defendant that he could not enter the Capitol. Because as soon as the defendant entered the Capitol, the officer went immediately after him

having previously been in contact with him and sought to try and -- the evidence would show have him leave the Capitol.

The defendant sought to avoid him. And then when the officer came back in contact with him, again, the defendant had the audacity to call the officer an oath breaker, which clearly was, in my view, an inappropriate statement to make to a police officer who was doing nothing other than carrying out his official duties to protect the Capitol and to protect those at the Capitol he has an obligation to protect. And, again, there is just no evidence whatsoever in the record that would suggest that the defendant's autism caused him to either get on the bullhorn and say the things that he did or to make that inappropriate statement to that police officer.

\*   \*   \*

And, clearly, one of the problems that we are suffering as a country as it relates to the 2020 election and the events that occurred on January 6th is this information that continues to be disseminated to the American public. And as a result of that, is creating the dissension that exists in America and that is just not good for the future of our country.

And the defendant contributed to that by what he did and what he said and didn't do when he appeared on the Tucker Carlson show, because that misinformation that he contributed to, in my view, contributes to what we are still experiencing as a result of what occurred on January 6th of 2021. And absent, again, my conclusion that anything has been shown that his autism should cause him to be treated differently than other individuals, it is my conclusion that a period of detention is therefore appropriate. (A. 44-49.)

The court then imposed various supervised release restrictions, including the restriction on disseminating disinformation at issue in this appeal:

> And since [Goodwyn] has used social media in order to provide what I consider to be disinformation about this situation, I would require that he permit his computer use to be subject to monitoring and inspection by the probation department to see if he is, in fact, disseminating information of the nature that relates to the events that resulted in what occurred on January 6th of 2021 (A. 52).

Defense counsel did not object to this restriction (see A. 53-54).

## Goodwyn's Claims on Appeal

Goodwyn now challenges the special condition related to dissemination of "disinformation," raising the following issues:

> **ISSUE 1**: Whether the district court made a mistake of law and abused its discretion under U.S.S.G. § 5D1.3(b), (ADD3)18 U.S.C. § 3553(a), (ADD6) and § 3583(d) (ADD11) by ordering the special release condition of computer searches and monitoring for "disinformation" when there is no law regarding "disinformation," and no computer use was reasonably related to Mr. Goodwyn's conduct under 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds (ADD1).
>
> **ISSUE 2**: Whether the district court is violating Mr. Goodwyn's rights under the First Amendment to the U.S. Constitution by its order of computer monitoring and searches for "disinformation" where there is no definition of "disinformation" and there was no computer use that was

10

related to or facilitated his crime under 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds (ADD1).

**ISSUE 3**: Whether the district court is directing violations of the Fourth Amendment to the U.S. Constitution by ordering computer monitoring and searches without reasonable suspicion or probable cause of criminal activity; where computer searches for undefined "disinformation" are not reasonably related to any crime, let alone the 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds trespassing charge for which Mr. Goodwyn was sentenced. (Appellant's Br. at 10.)

## DISCUSSION

This Court should remand to the district court to clarify the special supervised release condition related to dissemination of "disinformation." The law requires that before imposing a supervised release condition, the district court must make specific factual findings that the condition is "reasonably related" to one of the statutory sentencing goals: (1) the nature and circumstances of the offense conduct and the defendant's history and characteristics; (2) deterrence of the defendant's future criminal conduct; (3) protection of the public; and (4) the defendant's need for training and treatment. 18 U.S.C. §§ 3583(d)(1), 3553(a); USSG § 5D1.3(b); *see United States v. Sullivan*, 451 F.3d 884, 895 (D.C. Cir. 2006). Besides complying with statutory requirements tethering

11

supervised release conditions to statutory sentencing goals, the restrictions must not result in any "greater deprivation of liberty than is reasonably necessary" to meet these goals. 18 U.S.C. § 3583(d)(2); USSG § 5D1.3(b). The court therefore must "weigh the consequences for the defendant's liberty against any likely achievement of the statutory [sentencing] purposes." *United States v. Malenya*, 736 F.3d 554, 560 (D.C. Cir. 2013).

The district court did not explicitly find that the social media supervised release condition related to the statutory sentencing goals. The record suggests that the court imposed the restriction to protect the public. The district court was concerned that Goodwyn had minimized his conduct on live television, feeding public perception of government overreach in the January 6 prosecutions and fomenting further discord. Nevertheless, the condition's language prohibiting "disinformation about this situation" and "disseminating information of the nature that relates to the events that resulted in what occurred on January 6th of 2021" requires clarification. On remand, the district court would have the opportunity to clarify the statutory justification for this special condition and narrowly tailor it to achieve that goal. Remand thus could remedy

12

the concerns that Goodwyn has identified in his brief and could render this appeal moot.

Counsel for Goodwyn does not oppose this request for remand but states her position as that "the condition should be overturned and the case remanded for further proceedings."

## CONCLUSION

WHEREFORE, the government respectfully requests that this case be remanded to allow the district court to make further findings with respect to the supervised release condition relating to dissemination of "disinformation."

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

CHRISELLEN R. KOLB
Assistant United States Attorney

/s/
ELIZABETH H. DANELLO
Assistant United States Attorney
DC Bar # 407606

LISA TOBIN RUBIO
FL Bar # 769101
Assistant United States Attorney
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Lisa.Rubio@usdoj.gov
(202) 252-6829

## CERTIFICATE OF COMPLIANCE WITH RULE 27(d)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this motion contains 2,740 words, and therefore complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A). This motion has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

/s/
ELIZABETH H. DANELLO
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing motion to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, Carolyn A. Stewart, Esq., carolstewart_esq@protonmail.com, on this 30th day of November, 2023.

/s/
ELIZABETH H. DANELLO
Assistant United States Attorney