**THIS CASE HAS NOT BEEN SET FOR ORAL ARGUMENT**

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**No. 23-3106**

_____

**UNITED STATES OF AMERICA,**                              **Appellee,**

**v.**

**DANIEL GOODWYN,**                                  **Appellant**.

## APPELLANT'S OPPOSITION RESPONSE TO APPELLEE'S MOTION FOR REMAND TO THE DISTRICT COURT

Appellant DANIEL GOODWYN respectfully and timely opposes the Appellee's (AUSA's) Motion for Remand. ECF No. 2029319 ("the Motion"). The Motion fails to present any relevant legal argument or authority; presents no good cause for the relief requested; is untimely where without any approved extension of time it disregards the Court's rules for filing a dispositive motion while an appeal is pending; and incorrectly presented Mr. Goodwyn's position by claiming non-opposition to the Motion. Accordingly, the Court should deny the Motion with prejudice and vacate the District Court's special condition of computer searches and monitoring.

# I.  <u>PROCEDURAL HISTORY</u>

Mr. Goodwyn's conviction was for the misdemeanor 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds, on January 6, 2021. His guilty plea was heard and accepted by the Honorable U.S. District Court Judge Reggie Walton on January 31, 2023. A14-24.

Neither the AUSA's Sentencing Memorandum (1:21-cr-00153-RBW ECF No. 103), nor the separate Probation Services' Sentencing Recommendation (restricted) included a special condition of computer or social media monitoring and searches.

The Presentence Investigation Report (PSR) did not recommend a special condition of computer monitoring or computer searches despite the Motion's false statement that there was consent and a recommendation. Motion at 4. The PSR simply listed special conditions that *could be used if requirements under sentencing statutes and guidelines applied.* In this context the PSR was not objectionable and did not allow for continuous monitoring and searches where it included:

> You will submit to a search of your person, property, residence, adjacent structures, office, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), and other electronic communications or data storage devices or media, conducted by a U.S. Probation Officer. Failure to submit to a search may be grounds for revocation. . . . **An officer may conduct a search pursuant to this condition *only when* reasonable suspicion exists that you have violated a condition of your release and/or that the area(s) or item(s) to be searched contain evidence of this violation or contain contraband. Any search must be conducted at a reasonable time and in a reasonable manner**. . . .

PSR at ECF No. 99 (restricted)(Emphasis added).

Mr. Goodwyn's sentencing hearing was on June 5, 2023 and was extended to June 6, 2023 for the sentence judgment. The sentencing Order with the computer monitoring software condition was entered on June 16, 2023. A37.

Mr. Goodwyn's appeal notice was timely filed. It was docketed with this Court on July 7, 2023.

No dispositive motion was filed by the Appellee by the Court's deadline of 45 days (~August 21, 2023) after the appeal's docketing. Circuit Court Rule 27(g).

No motion to extend time for a dispositive motion was filed by the Appellee by 40 days (~August 16, 2023) after the appeal's docketing. *Id*. 27(h).

The Appellant's Brief and Joint Appendix were timely filed on September 5, 2023. ECF Nos. 2015295 and 2015457 respectively.

The Court's Order at ECF No. 2006858 required that any Appellee brief must be filed by October 5, 2023. On September 26, 2023, weeks after Mr. Goodwyn's Appellant's brief was filed, the Appellee entered an unopposed motion to extend time by 60 days because of the claim that a new AUSA was assigned who was applying to this Circuit's bar and had been on medical leave, was at work and needed time. ECF No. 2018999. The Appellant preferred 45 days for extended time but agreed to the 60 days given the Thanksgiving holiday and that the undersigned would be engaged in travel and another court matter from November 28 - Dec 3, 2023.

On October 2, 2023, the Court approved December 4, 2023 as the new date for the Appellee's brief, with the Appellant's Reply due on December 28, 2023.

The Appellee filed no brief by December 4, 2023.

The Appellee requested consent for and then filed the Day 1 sentencing transcript on November 30, 2023 after inferring that it was a supplement to the Joint Appendix for an Appellant's brief. ECF Nos. 2029322 (Motion for Supplement) and 2029338 (Supplement). The Supplement and not an exhibit as required was curiously used for the Motion while no brief was filed.

## II.    FACTUAL BACKGROUND

The Motion includes misrepresentation concerning non-opposition. The Appellee wrote that "Counsel for Goodwyn does not oppose this request for remand but states her position as that 'the condition should be overturned, and the case remanded for further proceedings.'" Motion at 13. The statement that the undersigned did not oppose a motion to remand is not true. The undersigned made clear during the phone call on November 20, 2023, that a motion that delayed, extinguished, vacated, or dismissed the appeal was completely opposed, and only agreed to the remedy that the order for computer and social media monitoring and searches be overturned, with remand to correct the Judgment Order.

Mr. Goodwyn entered into a plea agreement in December 2022. A14-24. The agreement included extensive negotiations because Mr. Goodwyn rightfully was not

going to lie and accepted where he was wrong in not departing without any delay during his thirty-six second foray in the building.

Mr. Goodwyn did not participate in any riot as falsely alleged. Motion at 1. He never knew he was not allowed to be on the grounds. He never engaged in, encouraged, incited, or witnessed violence on January 6, 2021 at the U.S. Capitol. Appellant's Brief ECF No. 2015295 at 11. He was present at the Capitol given flyers to permitted rallies; to take video and conduct interviews as a free-lance photojournalist; and to support the Electoral Count process, particularly the objections. He did not force his way anywhere. He was amidst peaceful people.

Presented as mitigating by the Defense and not credited by the District Court judge: Mr. Goodwyn was diagnosed before January 6, 2021 with the disability of high functioning autism. He participates in therapy and operates on cues and signals in daily life and social interactions. Every cue and signal he saw at the U.S. Capitol on January 6, 2021 indicated that he could be there. He had received flyers of rallies at the U.S. Capitol. He saw no barriers or area closed signs, he saw no violence, and he saw police standing by - allowing protestors to enter the Senate West Wing door. At no time did he cross a police line.

The District Judge disparaged Tucker Carlson at the sentencing, and while it was not an element of the crime of conviction, he chastised Mr. Goodwyn for not taking over the TV show and volunteering on air that he used a megaphone to ask

others to go inside with him to support the objection process. Mr. Goodwyn did not minimize the conduct he was convicted of under the Section 1752(a)(1). Nobody outside listened to Mr. Goodwyn, or acted on his megaphone speech despite the door being open and police outside not stopping entry.

Despite the video shown to the Court that made clear nobody listened to Mr. Goodwyn on the megaphone, the Appellee's fiction continues with the incorrect allegation that he used "a bullhorn to incite other rioters to storm the Capitol." Motion at 1. Mr. Goodwyn said and did no such thing. Mr. Goodwyn's cues showed that he could enter and support the objection process. Despite the Appellee's unwarranted embellishments that belie facts, Mr. Goodwyn's thirty-six seconds inside the U.S. Capitol comprise what he pled guilty to because he stopped to interact with a live streamer after being told to exit. Only within that thirty-six seconds was Mr. Goodwyn ever advised that he could not be present in the building. No dispersal order was ever issued at his location outside.

Mr. Goodwyn was completely truthful on Tucker Carlson's show in March, 2023. This is affirmed by the Statement of the Offense where Mr. Goodwyn took responsibility for delaying his departure from inside the building when he stopped to talk to the live streamer.

Nothing in his guilty plea (A14-22) or conduct on January 6, 2021 involved use of a computer or social media as shown in the Statement of the Offense (A31):

> **Elements of the Offense**
> 18. Daniel Goodwyn knowingly and voluntarily admits to all the
> elements of Entering or Remaining in a Restricted Building or Grounds,
> a violation of Title 18, United States Code, Section 1752(a)(1).
> Specifically, defendant admits he entered or remained in a restricted
> building or grounds without lawful authority to do so and that he did so
> knowingly. A person acts "knowingly" if he realizes what he is doing
> and is aware of the nature of his conduct, and does not act through
> ignorance, mistake, or accident.

1:21-cr-00153-RBW ECF No. 83 at 7 and A31.

Nothing Mr. Goodwyn said on Tucker Carlson's show retracted his plea - as admitted by the government in its sentencing memorandum. 1:21-cr-00153-RBW ECF No. 103 at 9.  The government wrote that "Carlson then turned to Goodwyn and asked him, 'I just want to be as fair and transparent as possible, is there anything you're leaving out? Did you commit vandalism? Did you hurt anyone?' Goodwyn correctly replied that he did not hurt anyone or steal anything." *Id*. at 5. The video that Judge Walton viewed showed all thirty-six seconds that Mr. Goodwyn was inside the Capitol, where the government created its own narrative about sounds and words using the video from CCTV without audio.

There is no need for Court-ordered surveillance and monitoring of social media. The FBI already surveils and monitors. The FBI received Congressional funding, acquired software tools, and uses other support such that without reasonable

suspicion it tracks and monitors, across all social media, the names, posts, or pictures by or about January 6th pre-trial and convicted defendants. Reports go to the DOJ.[1]

The Appellee AUSA contacted the undersigned on November 20, 2023 to discuss filing a response brief that included remand as the remedy. The AUSA mixed in language about a motion. The Appellant's response was conveyed without any doubt that the only acceptable remedy was to overturn and remand to correct the sentencing judgment. The undersigned was clear that any motion, should one be allowable, that would delay, extinguish, vacate, or dismiss the appeal was 100% opposed. There was no confusion by spoken language that if remand was proposed in the Appellee's brief then the Appellant's Reply would contain opposition.

The only agreement was that the Appellant wanted the District Court's special condition as addressed in the Appeal to be vacated, with any remand to be for the purpose of correcting the sentencing Order. The undersigned found the Appellee's discussion to be confusing since there was no reason to not proceed with a brief and oral arguments; and the Appellee had no permission to file late a dispositive motion that would only prejudice the Appellant. The AUSA never disclosed that she was not filing an Appellee brief and was only filing a late Motion without Court approval.

---

[1] Verified by reporting on another client of the undersigned's who was monitored after release from prison, with a report from use of advanced search software. It is unclear how any FBI tools and contractors would search for and report undefined "disinformation" outside of non-existent legal standards for the purposes of censorship and imprisonment, just as Probation Services have no standards.

The Appellee filed the Motion to Remand (ECF No. 2029319) and the "Supplement to the Joint Appendix" that was not a supplement for Appellee brief purposes. The Joint Appendix Supplement should have been an exhibit to the November 30, 2023 Motion.

## III.  <u>LEGAL STANDARDS</u>

The "CIRCUIT RULES of the UNITED STATES COURT OF APPEALS for the DISTRICT OF COLUMBIA CIRCUIT," Amended through December 1, 2020, combined with the Federal Rules of Appellate Procedure address motion filings. Circuit Rule 27, Motions clearly lists the timings that apply to a dispositive motion such as a remand that does not overturn the District Court's order:

> (g) Dispositive Motions.
> (1) Timing. Any motion which, if granted, would dispose of the appeal or petition for review in its entirety, or transfer the case to another court, must be filed within 45 days of the docketing of the case in this court, unless, for good cause shown, the court grants leave for a later filing.
>   . . .

Rule 27 makes clear that the transcript (that lacked findings) added to the Joint Supplement, belonged as an exhibit to the Motion. There was no Appellee brief entered and nothing in the supplement supports the special release condition. "There must be attached to each copy of a dispositive motion a copy of any pertinent opinion or findings issued by the district court or agency or, if the reasons were given orally,

the pertinent extract from the reporter's transcript must be attached, if available."

Circuit Court Rule 27(g)(2).

Rule 27 also provides requirements to extend time:

> (h) Motions to Extend Time for Filing and to Exceed Length Limits.
> (1) Timeliness of Request. A motion to extend the time for filing
> motions, responses, and replies, or to exceed the length limits for such
> pleadings, must be filed at least 5 days before the pleading is due.
> Motions filed less than 5 days before the due date will be denied
> absent exceptional circumstances, except that the clerk may grant
> unopposed late filed motions for extension of time for good cause
> shown.

Circuit Court Rule 27(h)

The "HANDBOOK OF PRACTICE and INTERNAL PROCEDURES
UNITED STATES COURT OF APPEALS for the DISTRICT OF COLUMBIA
CIRCUIT," as Amended through March 16, 2021, provides further elaboration on
this Court's Rules for filings. Section VII.A Motions Practice: Formal Requirements
explains the standards that the Appellee bypassed.

There is no legal standard for "*disinformation*" because it is not a federal crime
to say something untrue on the internet. "Disinformation" is not an element of any
federal crime. Perjury for example is its own crime, and requires deliberate lying
about a material matter under oath. There are no "disinformation police" although
the Appellee asserts by its Motion for remand that federal court judges can fill that
role. Disinformation exceeds the caselaw references to court holdings that used the
saying that a person "cannot yell fire in a crowded theater" when there is no fire.

Whether there was no fire and a speaker caused injuries due to an ensuing stampede at an exit is quite distinguished from differing with a government viewpoint.

The First Amendment to the U.S. Constitution and relevant, extensive case law provide the legal standard for speech, freedom of association, freedom of religion, and freedom of the press.

The Fourth Amendment to the U.S. Constitution and relevant, extensive case law provide the legal standard for the individual right to be secure at home and in papers and effects against unreasonable searches.

Statutes are in the Appellant's Brief Addendum. See §5D1.3 - Conditions of Supervised Release ADD3-5; 18 U.S.C. § 3553 Imposition of a Sentence ADD6-10; and 18 U.S.C. § 3583 Inclusion of a Term of Supervised Release at ADD11-14.

In the United States Sentencing Guidelines Manual (U.S.S.G.), "special conditions" may be imposed in the case of:

> (1) support of dependents. . . (2) debt obligations. . .
> (3) access to financial information. . . (4) substance abuse. . .
> (5) mental health. . . (6) deportation. . . (7) sex offenses. . .
> (8) unpaid restitution, fines, or special assessments. . .

18 U.S.C.S. Appx. § 5D1.3.

Nothing in the above authorizes a special release condition for viewpoint disagreement with the government. USSG §5D1.3 provides standards for supervised release discretionary conditions, under which computer monitoring falls. §5D1.3(b) (repeated in the other key statutes) requires that the conditions:

(1) **are reasonably related to**
  (A) **the nature and circumstances**
  **of the offense** and the history and characteristics of the defendant;
  (B) the need for the sentence imposed to afford adequate deterrence
  to criminal conduct;
  (C) the need to protect the public from further crimes of the
  defendant; and
  (D) the need to provide the defendant with needed educational
  or vocational training, medical care, or other correctional treatment
  in the most effective manner; and
(2) **involve no greater deprivation of liberty than is reasonably**
**necessary** for the purposes set forth above.

USSG §5D1.3(b) (ADD5 to Appellant's Brief)(Emphasis added).

## IV.    <u>ARGUMENT</u>

The DOJ / Appellee at the eleventh hour asks this Court to delay the appeal process and to allow censorship by the judge, the DOJ and its FBI, and any other person designated to conduct monitoring and searching without any standards. At present, protected speech by parents at school board meetings, fundamentalist Catholics, and January 6 defendants is collected under domestic terrorism. The DOJ, FBI, and Department of Homeland Security (DHS) have categorized and labelled patriotic and honest Americans as domestic terrorists. The Appellee now wants this Court to endorse an Orwellian Ministry of Truth process in the district court where content and viewpoint disagreement with the government leads to further agency abuses of domestic terrorism inquiries and investigations.

This Court vacated the special computer conditions in *Burroughs* because he did not use a computer to facilitate his crimes. This Court applied Section 3583(d)(1) of Title 18 where discretionary conditions of supervised release must be "reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)." *U.S. v. Burroughs*, 613 F.3d 233, 242 (D.C. Cir. 2010). Just as in Mr. Goodwyn's case, the government at district court level did not recommend any supervised release conditions related to computers. This Court held that "finding the government's reasons unsupported by the record, and unable to identify any ourselves, we vacate the conditions as plainly out of sync with the relevant factors and remand for further proceedings." *U.S. v. Burroughs*, 613 F.3d 233, 242 (D.C. Cir. 2010). Just because the district court judge erred or abused discretion does not warrant a remand to try to find reasons as the Appellee suggests in its motion. In appellate argument the government alleged that a computer could be used for crimes. The argument did not persuade the Court. "[N]early any criminal can use the Internet to facilitate illegal conduct. That an offense is sometimes committed with the help of a computer does not mean that the district court can restrict the Internet access of anyone convicted of that offense." *Burroughs*, 613 F.3d at 243.

Other circuits follow the same application. Most of the internet and computer conditions involve child pornography and sex with minors. In *United States v. Goodwin*, Goodwin was given ten special release conditions. These included

computer monitoring by software installation, device searches, copying, and equipment removal to examine more in depth. The Court stated, "We fail to see how these broad restrictions are reasonably related to Goodwin's offense, history, and personal characteristics. The record does not indicate that a computer played any role . . . . " *United States v. Goodwin*, 717 F.3d 511, 523 (7th Cir. 2013). The Court also found nothing related to "deterrence, public protection, and rehabilitative goals articulated in 18 U.S.C. § 3583(d)(2)." *Id. at* 523. The Court vacated the conditions.

A fifteen year ban on internet use was imposed and found to be unreasonable. The Court stated, "the defendant had no history of impermissible internet use, the internet was not an instrumentality of the offense, and thus the ban of all internet use was a greater deprivation of the defendant's liberty than was reasonably necessary for his rehabilitation." *United States v. Perazza–Mercado,* 553 F.3d 65, 69 (1st Cir. 2009). In the *Ramos* case, the Court said "*Perazza–Mercado* requires us to vacate the internet, computer, and pornography supervised release conditions. . . . [T]hese conditions are not reasonably related to Ramos's characteristics and history, and thus deprive him of more liberty than reasonably necessary to achieve the goals of sentencing." *United States v. Ramos*, 763 F.3d 45, 49 (1st Cir. 2014). The cases of *United States v. Freeman,* 316 F.3d 386, 392 (3d Cir.2003); *U.S. v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001); and *United States v. White,* 244 F.3d 1199, 1206 (10th Cir. 2001) are some of the other cases that support vacatur of Mr. Goodwyn's special

release condition involving searches and monitoring of his computers and communications that were not related to his conviction for January 6, 2021.

Because there was no use of any computer or social media involved with the crime for which Mr. Goodwyn was convicted, there is nothing to "clarify" by remand. The government referenced a single weak, inapposite case. Motion at 2. *Stanfield* included multiple issues, with an unclear internet restriction being one (he could not use sites to access social security numbers and other PII given his conviction for ID theft). *Stanfield*, remanded for scope in 2004, pre-dated social media and the internet's integration of almost every aspect of life. The government conceded the restriction was overbroad. There is no indication that Stanfield objected to the condition in its entirety. None of the filings are available in PACER. Nothing shows the resolution of the computer issue after remand. But *Burroughs* made clear there was no affirmation of the release conditions in *Stanfield*. *Stanfield* has no application to this case.

Approval of the Motion would reward what is seemingly frivolous. The Motion aims to extinguish the appeal because the government does not have the law to prevail. There is nothing to clarify. Remand resolves nothing when a decision to vacate can be made even absent oral argument. Mr. Goodwyn will be subjected to paying again a not trivial sum to file an appeal and incurring months before any decision when the district judge does not revoke his monitoring and search order,

and has no further findings that can clarify the present violation of statutes and case law.

## A. The Court Should Vacate the Special Release Condition Related to Computers and Devices Because the Motion is a Delaying Tactic to Avoid Doing What is Right

The above caselaw applications show that Mr. Goodwyn's special condition should be vacated. The Motion is a crafted delay at the eleventh hour because the Appellee has no legal legs to stand upon in a brief. The majority of its Motion tries to build prejudice against Mr. Goodwyn. Remand will instead send Mr. Goodwyn into limbo while adding expenses to litigate with no relief in sight. There is nothing on the record to support the special condition of computer searches and surveillance that comprise a constant, unreasonable search where there is no standard or law for "disinformation."

## B.  The Motion Should be Denied Because Time Standards Should Be Enforced.

The Appellee disregarded the Court requirement under Circuit Rule 37 where it was required to file any dispositive motion 45 days after the docketing of the case. The Appellee also disregarded Circuit Rule 37 by not requesting an extension of time for a dispositive motion by 40 days after the case was docketed. The Motion should be denied for these reasons alone, given the prejudice to Mr. Goodwyn in having to Respond on short notice during a period of a fully loaded schedule.

Further, by Rule 31(c) on briefs, the Appellee should be precluded from oral argument because no brief was filed.

**C. The Caselaw is Well Settled Where Overturning the Special Condition for Search and Monitoring in This Case is the Correct Remedy**.

Labelling speech content, viewpoints, and memes as "disinformation" is discriminatory censorship that can only be crafted in the eye (by political or other viewpoints) of the beholder. In this case, there is no answer as to who decides under what criteria that a viewpoint is "disinformation?" Unanswered is the question of what metrics quantify internet or social media dissemination of information. Unspecified is what legal authority allows the government to surveil U.S. citizens' public and private communications where there is no crime and no warrant to search and spy. Instituting a special condition of release that allows unreasonable, warrantless, baseless searches of computers, phones, drives, modems, routers, and communications content to then assess whether surveilled opinions and viewpoints fall under an undefined "disinformation" category completely disregards the U.S. Constitution and the statutes that address sentencing. The Appellee's motion states that all this Court needs to do is remand the appeal back to Judge Walton and magically he can transform all violations of civil rights and the Constitution present in his sentencing order.

Judge Walton declared at sentencing, without any facts in evidence regarding his allegation against Mr. Goodwyn that:

> . . . he has used social media in order to
> provide what I consider to be disinformation about this
> situation, I would require that he permit his computer use to
> be subject to monitoring and inspection by the probation
> department to see if he is, in fact, disseminating information
> of the nature that relates to the events that resulted in what
> occurred on January 6th of 2021.

Transcript, Joint Appendix at A52:18-24.

The Judge's statement above, within the context of the entire transcript, (A44-49) shows that undefined "disinformation" and what can capriciously be declared as disallowed information dissemination - that have nothing to do with Mr. Goodwyn's conviction of Section 1752(a)(1) or any federal law - is based on what Judge Walton considers. In plain English, the transcript shows that Mr. Goodwyn is to be surveilled and searched to determine whether he is communicating in 2023 and 2024 about January 6, 2021. That is what the words say. No allegation of disinformation or future information that can be "divisive" can be said to be reasonably related to a threat to public safety by Mr. Goodwyn or his crime of conviction. The transcript shows that using only his viewpoints and the news he listens to, the Judge declared that facts Mr. Goodwyn had showing that peaceful protestors were killed on January 6, 2021 were disinformation. Remand does not fix this - there is no fix. This is an emerging U.S. District Court Ministry of Truth come to life from George Orwell's 1984 fiction. A judge can decide what people should hear and believe. His opinion can supersede truth. That is not what the authors of USSG §5D1.3, 18 U.S.C. §

3553(a), and 18 U.S.C. § 3583(d)(1) contemplated for sentencing, release conditions, and special release conditions.

The Appellee wants this Court to quash the appeal by sending the matter back on remand. Months from now the judge can refuse to change his order that requires monitoring with recording equipment, and capricious and ambiguous searches for undefined "disinformation." The judge can make up his own law where he declares that protected speech, opinions, and association with people he does not like require searches and monitoring to protect the public from viewpoints. Mr. Goodwyn can be imprisoned if the judge, the DOJ and its FBI, or someone designated to search, and monitor disagrees with Mr. Goodwyn's speech, memes, and opinions. Mr. Goodwyn will be back at square one, and possibly in prison, if the Court follows the Appellee's fantasy that Judge Walton can make findings from the record for clarification that follow the established law and holdings. The correct path is to deny the Motion and overturn the special release condition at issue because there is no possibility the condition is reasonable, related to the crime or Mr. Goodwyn's history,  protects anyone, or is the least restrictive means under sentencing statutes.

The Appellee / DOJ wants to have the appeal delayed and cancelled by the Court by requesting "further findings." The Appellee wants "clarification." Motion at 11-12. There are no possible further findings for clarification that meet the statutory and caselaw standards to justify imposition of the special condition of

monitoring and searches for "disinformation." There is no relevant clarification to be had. There is no finding or clarification that can make the Judge's false allegation about Mr. Goodwyn "disseminating disinformation" on social media and by computer in 2023 become related to violation of 18 U.S.C. Section 1752 on January 6, 2021.

The Appellee is attempting to create a ruling where any speech made years after a January 6 charge and not in agreement with the current administration's views will cause imprisonment. The correct jurisprudence remedy should be vacating the computer and social media special release condition. Nothing Mr. Goodwyn did on January 6, 2023 that led to his plea and conviction for 18 U.S.C. Section 1752(a)(1) involved the use of a computer or social media. His legitimate associations and peaceful opinions expressed in 2023 are not relevant illegitimate and unreasonable searches and monitoring to note "disinformation."

The Appellee's assertion that upon remand Judge Walton could produce findings that make the unreasonable searches and monitoring become reasonably related to protecting the public - when all current caselaw first requires that the computer or internet must have been integral and part of the crime for which convicted - deliberately ignores the laws, statutes, and standards. The Appellee alleges that with remand Judge Walton could create what is non-existent: a computer and internet relation to the crime of peacefully trespassing. Motion at 2.

18 U.S.C. § 3553(a), Imposition of a Sentence (ADD6), requires that the court consider the factors in USSG §5D1.3(b). As presented in the Appellant's Brief, the computer search and monitoring sentence bears no reasonable relation to the nature and circumstances of the Section 1752 Restricted Grounds offense. No electronic device facilitated the offense. Further, the Court deigned the special condition as being for disinformation monitoring that has no relation to the Section 1752(a)(1) crime of entering a restricted building. The Order is thus unreasonable under the sentencing factors. Nothing in Mr. Goodwyn's crime that he pled to or his conduct at the U.S. Capitol implicates social media or a computer. 18 U.S.C. Section 3553 (ADD 6), 18 U.S.C. § 3583(d)(1), (A11)  do not contemplate that a judge can order disinformation monitoring because he disagrees with a defendant's First Amendment protected, posted content or viewpoint.

Without vacatur, the judge, supervisory officer, or DOJ can demand Mr. Goodwyn be imprisoned for First Amendment speech while violating his privacy and that of his clients, preventing his gainful employment, and fabricating narrative interpretations of searches, posts, and private texts. There is nothing to determine on remand because the special condition is not authorized under any legal standard.

## V.    <u>CONCLUSION</u>

Wherefore, for the foregoing reasons with good case shown, and for any other reasons the Court finds, this Court should deny the Appellee's Motion to remand this case to the U.S. District Court for the District of Columbia; and should grant Mr. Goodwyn's briefing remedy by vacating the District Court's special condition of supervised release, with remand to the District Court to correct the sentencing order in accordance with this Court's holding.

December 11, 2023                    Respectfully Submitted,


                                    /s/ *Carolyn Stewart*
                                    Carolyn Stewart
                                    Appellant's Counsel
                                    Stewart Country Law PA
                                    1204 Swilley Rd.
                                    Plant City, FL 33567
                                    Tel: (813) 659-5178
                                    Email: Carolstewart_esq@protonmail.com

## CERTIFICATE OF COMPLIANCE

(Fed. R. App. P. 27(d)(2)(A))

The text of the foregoing Appellant's' Opposition Response to the Government Appellee's Motion for Remand was prepared using Times New Roman, 14-point font and contains 5032 words, as counted by counsel's word processor (Microsoft Word version 16.79.2).

December 11, 2023

/s/ *Carolyn Stewart*
Carolyn Stewart
Appellant's Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of December, 2023, I caused the foregoing Appellant's' Response in Opposition to the Appellee's Motion for Remand to be served on Appellants by the Court's electronic filing system.

December 11, 2023

/s/ *Carolyn Stewart*
Carolyn Stewart
Appellant's Counsel